# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

JANE DOE,                               Case No. 3:2021-cv-12492

          Plaintiff,            Hon. Shalina D. Kumar

v.                                      Mag. Judge Elizabeth A. Stafford

UNIVERSITY OF MICHIGAN,
et al.

          Defendants.

---

## PLAINTIFF'S AMENDED OPPOSITION TO DEFENDANTS MOTION TO DISMISS

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................3

ARGUMENT .......................................................................................5

   A.  Standard for Dismissal ..................................................................5

   B.  Plaintiff Has Standing to Bring a Title IX Claim as Non-Student ..................6

   C.  The Title IX Claim is Not Time Barred ..........................................8

   D.  Well Pled Deliberate Indifference Claim Under Title IX .............................11

   E.  Individual Liability Under Title IX ...............................................15

   F.  Defendant's Are Not Entitled to Qualified Immunity....................................17

   G.  Jurisdiction Over State Law Claims.............................................19

CONCLUSION .....................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Silberstein v. City of Dayton*, 440 F.3d 306 (2006). ................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ....................................5

*Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020) .......4

*Davis v. Monroe County Bd. Of Educ.,* 526 U.S. 629 (1999) ...................................11

*Doe v. Dallas Inden. Sch Dist.*, 220 F.3d at 384 (5th Cir. 2000).............................11

Doe v. Univ. of Mich., 448 F. Supp. 3d 715, 728 (E.D. Mich. 2020).....................17

*Doe v. University of Cincinnati*, 872 F.3d 393 (2017) ............................................17

*Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008)......................................4

*Hall v. Millersville Univ.*, 22 F.4th 397 (U.S. 3d Cir. 2022) ................................6, 7

*Kesterson v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020) ..........................12

*Kollaritsch v. Michigan State Univ. Bd. of Tr.*, 944 F.3d 613, 624-25 (6th Cir. 2019) ..........................................................................................................13

*Mennone v. Gordon*, 889 F. Supp. 53 (D. Conn. 1995)....................................15, 16

*Norris v. Norwalk Pub. Sch.*, 124 F. Supp. 2d 791, 792 (D. Conn. 2000) ..............15

*Novak v. City of Parma, 932 F.3d 421, 426-27 (6th Cir. 2019)* ...............................4

*Packard v. Farmers Insurance Co. of Columbus, 423 Fed. Appx. 580, 584 (6th Cir. 2011)* ...............................................................................................................19

*Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir.1992) .....................................17

*Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir.2005) ...............................................17

Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ....17

*United States ex rel. Conner v. Salina Regional Health Center*, 543 F.3d 1211 (10th Cir. 2008)..................................................................................................4

*Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (U.S. 6th Cir. 2022)..................13, 14

*White v. United States*, 601 F.3d 545 (6th Cir. 2010)................................................4

*Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012) ...............................................................................................................7, 8

## Statutes

*20 U.S.C.* § 1681 ......................................................................................................5

28 U.S.C. §1367..........................................................................................................18

28 U.S.C. §1367(c)(3)..................................................................................................18

34 CFR 106.44 ............................................................................................................5

65 F34 C.F.R. § 106.44(a) ...................................................................................10

Federal Rule of Civil Procedure 12(b)(6) ................................................................4

Title IX of the Education Act Amendments of 1972 ................................................5

**NOW COMES** Plaintiff JANE DOE, by and through her attorney, with Plaintiff's Response to Defendant's Motion to Dismiss and hereby state the following:

## ARGUMENT

### A. Standard for Dismissal

Under Federal Rule of Civil Procedure 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). At the motion-to-dismiss stage, "we 'must accept as true all material [factual] allegations of the complaint'" and "must construe the complaint liberally in favor of the complaining party." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008)).

At the current stage, it simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020). If resolving the dispute involves a question of fact upon which evidence is required, dismissal on the pleadings is not appropriate. See *Novak v. City of Parma, 932 F.3d 421, 426-27* (6th Cir. 2019).

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants fail to show that Plaintiff's claims, taken on their facts, will not provide for relief following discovery on the claims. For that reason alone, Defendants motion for summary judgement must fail.

## B. Plaintiff Has Standing to Bring a Title IX Claim as Non-Student

Title IX of the Education Act Amendments of 1972 ("Title IX") prohibits discrimination based on sex in educational institutions receiving federal funding. *20 U.S.C.* § 1681. Schools receiving federal funding are required to employ at least one Title IX coordinator, and a staff member responsible for Title IX compliance. Moreover, 34 CFR 106.44 provides that such institutions must respond affirmatively when they receive "actual knowledge" that a student may have been discriminated against based on gender. This creates a duty for institutions to have

their Title IX coordinator promptly investigate allegations of sex-based discrimination.

At all relevant times Plaintiff was a prospective student of the University of Michigan. In 2013, Plaintiff sought out a mentorship with John Doe. Plaintiff's connection with the University of Michigan are extensive. The case law that Defendant's propose lack similar facts to the current claim. The case law presented by the Defendants show lack of standing for individuals who had cursory contact with a university. The facts of Plaintiff's case differ significantly in depth and duration.

Plaintiff was a patient at the University of Michigan Health System. Plaintiff sought out a mentorship relationship with John Doe as she intended to, and eventually would, be accepted to the University of Michigan. Plaintiff entered into a more formal internship with John Doe. Unbeknownst to her at the time, the internship was unauthorized. She participated in the internship at the University of Michigan Health System, interacting with other Health System employees, interns and patients.

Liability under Title IX for non-students has been found in Third Circuit case *Hall v. Millersville Univ.*, 22 F.4th 397 (U.S. 3d Cir. 2022). The U.S. Court of Appeals for the Third Circuit issued a precedential decision in *Millersville Univ.* holding for the first time that colleges and universities may face damages liability

under Title IX for deliberate indifference to known sexual harassment committed by nonstudent guests. *Id.*

If a non-student guest of an institution triggers a Title IX claim, then a non-student interning under a professor, who the University has substantial control over, qualifies under a Title IX claim. Plaintiff was a patient at the University of Michigan, an intern under John Doe practicing at the University of Michigan and a prospective medical student.

As the facts of the case provide, Plaintiff is entitled to Title IX protection as a result of her extensive relationship with the University of Michigan.

### C. The Title IX Claim is Not Time Barred

Plaintiff's claims are not time barred under the equitable tolling doctrine. Defendants' deception and misrepresentation resulted in the delay of Plaintiff bringing the current claim as Plaintiff was unaware that Defendant failed to act.

The equitable tolling doctrine is available in limited circumstances. Equitable tolling doctrines may also apply if a plaintiff did not assert timely claims under Title IX due to fraud, misrepresentation, or deception by the defendant. For example, in *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012), the school actively concealed reports of sexual assault by a football coach. The school did not disclose any of the allegations against the coach

and instead publicly represented that the accused coach "remained in good standing at the school and was held in high regard." The federal court found that the school's "deceitful conduct" may have led the plaintiff's to "falsely believe that [the school] was unaware of [the accused coach's] misconduct and could not be liable[.]" *Id.*

Following the abuse of Plaintiff by John Doe, Plaintiff contact University of Michigan's Title IX office in early 2018. In February 2018. A Title IX intake was completed. In February 2018, Defendant Baum and Defendant Seney stated that they would not be able to conduct a formal investigation, but due to the nature of the allegations, they would conduct an informal investigation toward disciplinary action. Plaintiff relied on the statements of Baum and Seney. In April 2018 Plaintiff was notified by Baum that John Doe's adjunct professor position had been "discontinued" and that John Doe "was informed that I raised concerns about his behavior". Conversations between Baum and Plaintiff continued until June 2018. Defendant Baum suggested to Plaintiff that she speak to Dr. Owyang about the termination and her overall safety in the hospital.

In September 2019, Plaintiff saw through a public social media post that John Doe was interviewing at Stanford School of Medicine for both a doctor and professorship position. Plaintiff sent Stanford Title IX Office and School of

Medicine Staff, information regarding John Doe's termination, as well as further evidence about the sexual assault she had experienced. Through pre-suit negotiations, documentation was revealed that there was no record of disciplinary action at UM. Furthermore, it was revealed that John Doe was never informed of Jane Doe's report to the Title IX office. Rather, John Doe chose not to renew his position at the University of Michigan when Dr. Owyang called him.

Therefore, the University of Michigan had failed to conduct an informal investigation of the matter – despite the serious allegations of sexual assault and intimate person violence.

It was not until contacting Stanford's Title IX Office in September 2019 and subsequently receiving a cease-and-desist letter in April of 2020 that Plaintiff had knowledge that the University of Michigan had failed to investigate following her intake in the Title IX Office at the University of Michigan.

Plaintiff's discovery that there was no record of disciplinary action at University of Michigan after contacting Stanford's Title IX Office and being informed via a cease-and-desist letter in April of 2020, is relevant for purposes of determining the accrual date of the statute of limitations as the doctrine of equitable tolling applies. As shown above, Defendant's meet the deceitful conduct prong under Zimmerman, for the following reasons:

Defendant Baum stated that John Doe had been terminated and was the subject of disciplinary action by the University of Michigan. Both of these assertions were proven to be false. Baum further continued the lie by saying that he personally fired John Doe. Plaintiff did not obtain actual knowledge of Defendants failure to investigate until April 2020. Therefore, because Defendants have failed to take corrective action and have demonstrated sufficient evidence to qualify under an Equitable Toll Doctrine, Plaintiff's claims are not time-barred and therefore Defendants' motion to dismiss in that regard should be dismissed.

### D. Well Pled Deliberate Indifference Claim Under Title IX

When a school has actual knowledge of sexual harassment in any of its programs or activities that take place in the United States, it must "respond promptly in a manner that is not deliberately indifferent." The Title IX Coordinator must promptly contact the complainant to discuss the availability of supportive measures, regardless of whether a formal complaint is filed, and to explain the process for filing a formal complaint. In addition, if a formal complaint is filed, either by the complainant or the Title IX Coordinator, a school must: offer supportive measures to the respondent and follow the Title IX grievance process specified by the 2020 amendments. 65 F34 C.F.R. § 106.44(a).

Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the harm ultimately was not averted. Determining what constitutes appropriate remedial action for allegations of discrimination in Title IX of the Education Amendments of 1972 cases will necessarily depend on the particular facts of the case. *Doe v. Dallas Inden. Sch Dist.*, 220 F.3d at 384 (5th Cir. 2000).

A school district is guilty of deliberate indifference only when its response is "clearly unreasonable in light of the known circumstances." *Davis v. Monroe County Bd. Of Educ.,* 526 U.S. 629 (1999). The facts are clear that the University of Michigan was deliberately indifferent, if not worse, when it came to handling Plaintiff's claims of abuse. The claims were swept under the rug and dealt with dishonestly from within.

Here, as outlined earlier in this Response, Plaintiff contacted the University of Michigan Title IX Office in 2018. In February 2018, she met with David Baum and Elizabeth Seney who did her intake. They stated they would be unable to conduct a formal investigation, but due to the nature of the allegations, they would conduct an informal investigation toward disciplinary action.  FAC ¶ ¶ 32

Nothing happened until April 2018, when Plaintiff received an email from David Baum stating that John Doe's adjunct professorship "was discontinued" and that he "was informed that I raised concerns about his behavior." Emails with David Baum continued until June 2018, which further stated that John Doe had been terminated and was the subject of disciplinary action by the University of Michigan based on her reports. David Baum suggested that Plaintiff speak to Dr. Owyang about the termination and her overall safety in the hospital. FAC ¶ ¶ 33

As noted in ¶ ¶ FAC 32-37 Defendant's acted with deliberate indifference by not conducting proper investigations. In conclusion, an institution is deliberately indifferent to harassment if it reacts in a way that is "Clearly unreasonable in light of what it knew" *Kesterson v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020). Accordingly, the FAC provides sufficient allegations that Defendants acted with deliberate indifference. Defendants acted unreasonably in light of the known circumstances.

To survive a motion to dismiss, a student-victim plaintiff must plead, "an incident of actionable sexual harassment, the school's actual knowledge of it, some further incident of actionable sexual harassment, that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the Title IX injury is

attributable to the post-actual-knowledge further harassment." *Kollaritsch v. Michigan State Univ. Bd. of Tr.*, 944 F.3d 613, 624-25 (6th Cir. 2019).

Additionally, to establish causation under a Title XI deliberate indifference claim, a plaintiff must prove that he was subjected to further post-actual-knowledge harassment which would not have occurred but for a University's deliberate indifference. *Kollaritsch v. Mich. State. Univ. Bd. of Trs.*, 944 F.3d 613, 623-24 (6th Cir. 2019). The University of Michigan had failed to conduct an informal investigation of the matter – despite the serious allegations of sexual assault and intimate person violence – and allowed John Doe to have continued access to the University of Michigan's email servers, business contacts, and more students, until the end of his renewal on August 31, 2018. FAC ¶ ¶ 37

The Court found in *Wamer*, that refraining from applying the more stringent standard in *Kollaritsch* does not change the fact that a Plaintiff must still allege that: (1) they were sexually harassed by a teacher or professor, (2) an official with authority to take corrective action had actual notice of the harassment, (3) the school's response was clearly unreasonable, and (4) the school's deliberate indifference caused her to suffer discrimination. *Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (U.S. 6th Cir. 2022) A less stringent standard is applied with facing

a student-teacher incident of harassment than when the harassment is between two peers. The Court should use the standard set forth in *Wamer*, as the harassment was one of an authority figure with the likes of a student, inter to professor relationship. *Wamer* does not require post-notice harassment to occur to allow for a valid Title IX claim to proceed when a student-teacher relationship was present.

While unfortunate, The University of Michigan has faced some horrendous claims of sexual harassment from the internal medicine department that have been made public. With knowledge of other instances of sexual abuse occurring in the department, it is unconscionable that Defendant's failed to investigate Plaintiff's allegations against John Doe, a fellow internal medicine doctor within the department.

## E. Individual Liability Under Title IX

Defendants argue that there is not individual liability under Title IX. While discussion of individual liability under Title IX in the sixth circuit has been limited, other circuits have delved into the matter.

Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C.S. § 1681 et seq., does not restrict the potential class of defendants based on their nature or identity (i.e. individual, institution, etc.). It does, however, restrict them based

on their function or role in a program or activity. Thus, the plain language of the statute sets forth a functional restriction that does not preclude individual defendants, as long as they exercise a sufficient level of control. An individual could be liable under Title IX if he exercised some level of control over the program or activity under which the discrimination occurs. *Norris v. Norwalk Pub. Sch.*, 124 F. Supp. 2d 791, 792 (D. Conn. 2000).

In *Mennone*, the court concluded that Title IX liability could be asserted against an individual who operates or controls a particular educational program or activity. *Mennone v. Gordon*, 889 F. Supp. 53 (D. Conn. 1995). Title IX restricts potential class of defendant's based on their function or role in a program or activity (not on their status). In ruling on a motion to dismiss the plaintiff's Title IX claims against her teacher and the superintendent, the court determined that the language of Title IX does not restrict the potential class of defendants based on their status, but rather based on their function or role in a program or activity.

Further, Title IX provides that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…20 U.S.C. § 1681. The court found that the plain language of section 1681 "broadly refers to discrimination occurring 'under any

education program or activity.'" *Mennone*, 889 F. Supp. at 56. According to the *Mennone* court: This language does not restrict the potential class of defendants based on their nature or identity (i.e. individual, institution, etc.). It does, however, restrict them based on their function or role in a program or activity. Thus, the plain language of the statute sets forth a functional restriction that does not preclude individual defendants, as long as they exercise a sufficient level of control. *Id.*

The court therefore concluded that an individual could be liable under Title IX if he exercised some level of control over the program or activity under which the discrimination occurs.

Here, Defendants are individuals who operate or control a particular educational program or activity. They failed to investigate claims of sexual harassment against a professor, providing him with the means to continue perpetrating such crimes. For this, the individual defendants should not be able to seek refuge under a Title IX individual liability exception.

Therefore, Defendant's claim that individual liability doesn't exist under Title IX should be dismissed.

## F. **Defendant's Are Not Entitled to Qualified Immunity**

Defendants argue that qualified immunity shields them from personal liability. "Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known*." Silberstein v. City of Dayton*, 440 F.3d 306 (2006). To overcome this defense, Plaintiff must allege "facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time the act was committed." *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir.1992).

These facts must satisfy two prongs. First, he must show that "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred." *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir.2005); see also *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Second, Plaintiff must show that "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Sample*, 409 F.3d at 696; see also *Saucier*, 533 U.S. at 201. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Id.* The plaintiff's fate without a hearing and cross-examination was a "disturbing . . . denial of due process." *Doe v. Univ. of Mich.*, 448 F. Supp. 3d 715, 728 (E.D. Mich. 2020), citing *Doe v. University of Cincinnati*, 872 F.3d 393 (2017).

Plaintiff had a right to due process through the Title IX process. An intake was completed with Plaintiff at which point Defendants subsequently failed to provide an ounce of concern when they deliberately chose not to investigate the matter. Plaintiff was lied to about the status of the investigation when Defendant Baum stated that John Doe has been fired from the University. By providing to Plaintiff through Baum's follow up with her that Defendant had been fired and spoke to about his behavior, Plaintiff relied upon this assertation that Defendant had investigated the claim an come to a determination. This was a misrepresentation on the part of Defendants which deprived Plaintiff further of her rights.

### G.  Jurisdiction Over State Law Claims

Defendants correctly provide 28 U.S.C. §1367, which provides that "Federal courts can only exercise supplemental jurisdiction over state law claims as a result of 28 U.S.C. §1367, their conclusion that Plaintiff's federal claims fail is mistaken. A district  court  "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction" 28 U.S.C. §1367(c)(3). The Sixth Circuit has applied "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."

*Packard v. Farmers Insurance Co. of Columbus*, 423 Fed. Appx. 580, 584 (6th Cir. 2011).

As stated, and supported within this brief, Plaintiff's federal claims brought before the Court should be allowed to proceed negating the determination of supplemental jurisdiction on Plaintiff's state law claims.

The University of Michigan had "actual knowledge" of the sexual harassment and assault that Jane Doe suffered at the hands of John Doe because Plaintiff reported the sexual harassment and assault to the Defendants. Therefore, UM was legally required under Title IX to conduct a full and thorough investigation into the sexual harassment and assault suffered by Doe. Defendant UM violated their Title IX obligations and inflicted sex-based discrimination on Jane Doe when: Defendant BAUM failed to initiate any meaningful Title IX investigation into John Doe's illegal actions. Defendant UM through Defendant BAUM failed to undertake any affirmative actions to ensure that Jane Doe felt safe on UM campus. As a result of Defendants' violations, Doe suffered profound disruptions to her sense of safety at The University of Michigan.

## CONCLUSION

**WHEREFORE** the Plaintiff requests that the Court deny the Defendants Motion to Dismiss.

Date: June 15, 2022                    Respectfully Submitted,

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JANE DOE,                                   Case No. 3:2021-cv-12492

        Plaintiff,                          Hon. Shalina D. Kumar
v.                                          Mag. Judge Elizabeth A. Stafford

UNIVERSITY OF MICHIGAN,
et al.
        Defendants.

---

## CERTIFICATE OF SERVICE

---

I certify that on June 15, 2022, I served the foregoing Plaintiff's Response to Defendants Motion to Dismiss upon all parties herein by filing copies of same using the ECF System.

Respectfully Submitted,

Keith Altman, Esq.
Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorneys for Plaintiff*