# EXHIBIT A

Case 4:21-cv-12492-SDK-EAS ECF No. 31-1, PageID.434 Filed 10/10/22 Page 2 of 5

Arocho v. Ohio University, Not Reported in Fed. Rptr. (2022)

2022 WL 819734
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

Alison AROCHO, Plaintiff-Appellant,
v.
OHIO UNIVERSITY, Defendant-Appellee.

No. 20-4239
|
FILED March 18, 2022

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

**Attorneys and Law Firms**

Daniel J. Canon, Law Office, Indianapolis, IN, Michael Fradin, Law Office, Athens, OH, for Plaintiff-Appellant.

Benjamin Michael Flowers, Michael Jason Hendershot, Office of the Attorney General of Ohio, Columbus, OH, Sylvia May Davis, Office of the Attorney General of Ohio, Cleveland, OH, for Defendant-Appellee.

Before: GUY, COLE, and STRANCH, Circuit Judges.

OPINION

JANE B. STRANCH, Circuit Judge.

**\*1** This case grows out of Alison Arocho's claims that Robert Parsons, an Ohio University police officer, sexually assaulted her after a career day event co-sponsored by the high school she was attending and Ohio University. Arocho sued in both state and federal court. In federal court, Arocho alleges that Ohio University violated Title IX when it was deliberately indifferent to Parsons sexually assaulting her. Finding that her complaint failed to allege a Title IX claim, the district court dismissed the case. We **AFFIRM**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts are taken from the complaint and viewed in the light most favorable to Arocho. Arocho was a student at Federal Hocking High School during the 2005–2006 school year. Parsons was an Ohio University police officer, and the "designated liaison to Federal Hocking High School." During the 2005–2006 school year, Arocho attended a career day that Ohio University provided in partnership with the high school. Parsons represented the Ohio University Police Department at the career day. He met Arocho during the event and made "inappropriate communications of a sexual nature" to her. He then "made plans to have sex" with her "later that evening."

"Over a period of many months" during the 2005-2006 school year, Parsons sexually assaulted Arocho on multiple occasions during "work hours and at work-related locations," including in his Ohio University police cruiser. He sexually assaulted her "[o]n at least one occasion ... on or around the premises" of Ohio University.

Ohio University knew that Parsons was accused of similar sexual misconduct in 2000-2001 based on a report from the Athens County Department of Children's Services. The misconduct was "never reported to or investigated by Ohio University's Office of Equity and Civil Rights Compliance." In December 2005, the Athens County Sheriff's Department notified the Ohio University Police Department that it was investigating Parsons for sexual misconduct with minors.[1] After Ohio University did its own investigation, it terminated Parsons in February 2006.

Arocho sued Ohio University in October 2019 alleging that it violated Title IX of the Education Amendments of 1972 based on deliberate indifference to the sexual assaults. The University ultimately moved to dismiss Arocho's amended complaint. The district court granted the motion on the basis that Arocho was a not an Ohio University student and her career day allegations were insufficient to establish a Title IX claim. *Arocho v. Ohio Univ.*, 469 F. Supp. 3d 795, 801 (S.D. Ohio 2020), *reconsideration denied,* No. 2:19-CV-4766, 2020 WL 6949098 (S.D. Ohio Oct. 28, 2020). Arocho timely appealed.

**II. STANDARD OF REVIEW**

We review a district court's grant of a motion to dismiss de novo. *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021). "We construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Hill v. Snyder,* 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662,

Case 4:21-cv-12492-SDK-EAS ECF No. 31-1, PageID.435 Filed 10/10/22 Page 3 of 5

Arocho v. Ohio University, Not Reported in Fed. Rptr. (2022)

678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

**\*2** Title IX is "designed primarily to prevent recipients of federal financial assistance from using the funds in a discriminatory manner." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998). Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). It is undisputed that Ohio University receives federal funding. "Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available." *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) (quoting *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001)).

Arocho's specific Title IX claim is that Ohio University was deliberately indifferent to a university employee sexually assaulting her. In *Gebser*, the Supreme Court held that a school cannot be held liable for damages under Title IX "for a teacher's sexual harassment of a student absent actual notice and deliberate indifference." 524 U.S. at 292–93. The Court extended the deliberate indifference standard to student-on-student harassment in *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).

The district court concluded that because Arocho did not allege she was an Ohio University student and because career day was not the kind of program Title IX was designed to protect, Ohio University was entitled to dismissal of the claims brought by Arocho. *Arocho*, 469 F. Supp. 3d at 801.

Our caselaw recognizes that a nonstudent can state a Title IX claim under a covered university's "education program or activity," if the plaintiff is "excluded from participation in, [is] denied the benefits of, or [is] subjected to discrimination" under any university "education program or activity," 20 U.S.C. § 1681(a). For nonstudent Title IX claims, we have examined the relationship between the plaintiff and the defendant-university, and the relationship between the plaintiff and the school that the plaintiff attends. In *Doe v. University of Kentucky*, a University student sexually assaulted the plaintiff—who was a community college student, not a University of Kentucky student. 971 F.3d 553, 555 (6th Cir. 2020). The plaintiff lived in University housing and paid for the housing, a dining plan, and student fees, which gave her access to the University's resources. *Id.* at 558. We reversed the district court's dismissal of the Title IX claim, determining that there were "genuine disputes as to whether she was denied the benefits of an 'education program or activity' furnished by the University" because the plaintiff was "paying the University directly for much of her educational experience" and there was a "close academic relationship between the University and [her] Community College." *Id.* at 558–59.

Similarly, the First Circuit in *Doe v. Brown University*, 896 F.3d 127 (1st Cir. 2018), explained that a nonstudent can bring a Title IX claim based on the services the university provides to the public. In *Brown*, three Brown University students drugged the plaintiff at a bar and then took her to a Brown dormitory and sexually assaulted her. *Id.* at 128–29. The plaintiff sued Brown for violations of Title IX, alleging that she "suffered interference with her access to educational opportunities to the point where she had to withdraw from Providence College." *Id.* at 132.

The First Circuit concluded that "a victim does not need to be an enrolled student at the offending institution in order for a Title IX private right of action to exist." *Id.* at 132 n.6. It explained that nonstudents, like members of the public, may regularly use services such as "university libraries, computer labs, and vocational resources and attend campus tours, public lectures, sporting events, and other activities at covered institutions." *Id.* The court reasoned that members of the public could be "either taking part or trying to take part of a funding recipient institution's educational program or activity." *Id.*; *see* 20 U.S.C. § 1681(a) (prohibiting discrimination based on sex "under any education program or activity receiving Federal financial assistance"). The court, however, affirmed the grant of Brown University's motion for judgment on the pleadings because "her complaint did not allege that she participated or even would have participated in any of Brown's educational programs or activities." *Brown*, 896 F.3d at 133. Thus, her complaint did not "establish that she has been 'subjected to discrimination under [Brown's] education program or activity.' " *Id.* (alteration in original).

**\*3** Based on our precedent in *University of Kentucky*, a nonstudent like Arocho may bring a Title IX claim, if she was excluded from or discriminated against under a "education program or activity." At issue here is whether

Case 4:21-cv-12492-SDK-EAS ECF No. 31-1, PageID.436 Filed 10/10/22 Page 4 of 5

Arocho v. Ohio University, Not Reported in Fed. Rptr. (2022)

Arocho sufficiently alleged exclusion from or discrimination under an Ohio University "education program or activity."

Arocho argues that she states a Title IX claim because Parsons sexually assaulted her on campus, using university resources to do so.[2] Title IX requires that a plaintiff suffer discrimination under an "education program or activity." 20 U.S.C. § 1681(a). Like the plaintiffs in *University of Kentucky* and in *Brown*, Arocho must connect her sexual assault to an Ohio University "education program or activity." See *Univ. of Ky.*, 971 F.3d at 558–59; see also *Brown*, 896 F.3d at 133. She alleges that Parsons sexually assaulted her during his "work hours and at work-related locations," and in his Ohio University police cruiser. The only "education activity or program" that Arocho alleges is the career day that she attended at Ohio University. To determine whether Arocho can maintain a Title IX claim based on her allegations about career day, we consider the relationship between Arocho and Ohio University, and the relationship between Ohio University and Arocho's high school—the analysis we employed in *University of Kentucky*. Arocho alleged that career day was an "Ohio University and Ohio University Police Department sanctioned event."[3] She also alleges that it was a "vocational career development activity through the Ohio University/Ohio University Police Department and Federal Hocking High School." When Arocho went to career day, Parsons made "inappropriate communications of a sexual nature" to her and "made plans to have sex with [her] ... later that evening."

The factual allegations about career day and Arocho's relationship with Ohio University have some similarities to the facts in *University of Kentucky*. Arocho is correct that this case is like *University of Kentucky* in that she alleges that Ohio University and the high school have a close relationship, similar to that between the Community College and the University of Kentucky. Arocho also alleges that "Ohio University had a partnership relationship with Federal Hocking High School"; employs a "Federal Hocking Secondary School Program Coordinator"; uses the high school "as a site for various programs"; and that students at the high school can take Ohio University classes.

**\*4** But unlike the *University of Kentucky* plaintiff, Arocho's connection to Ohio University is attenuated. The plaintiff in *University of Kentucky* paid to reside in a University residence hall, paid to use the University's resources, and "hoped to eventually enroll at the University after beginning her education at the Community College." 971 F.3d at 558.

There, we concluded that the plaintiff's relationship with the University of Kentucky and the relationship between the University and the Community College led to a genuine dispute of material fact. *Id.* at 558–59.

By contrast, Arocho was not paying Ohio University for its services, nor does she allege that she participated in or planned to participate in education programs such as taking Ohio University classes as a high school student "to receive college credit." The amended complaint provides little to no information about the "educational opportunities" and "vocational training activities" of Ohio University that Arocho was deprived of participating in. Based on the amended complaint, the full extent of Arocho's relationship with Ohio University was her participation in career day. Arocho also does not allege that she intended to partake in any Ohio University education program or activities in the future. See *id.* at 558; see also *Brown*, 896 F.3d at 132 n.6 ("Doe failed to allege that ... she intended to [avail herself of any of Brown's educational programs] in the future."). At bottom, Arocho's complaint does not allege her connection to an Ohio University "education program or activity" and fails to show that she "is so closely tied to [the] university that [she] is essentially a student of [Ohio University]." *Univ. of Ky.*, 971 F.3d at 559 n.4.

For the same reason, Arocho's reliance on *Doe v. Mercy Catholic Medical Center*, 850 F.3d 545 (3d Cir. 2017) is misplaced. There, the plaintiff participated in educational programs through a private teaching hospital's residency program. *Id.* at 550. The director of the residency program sexually harassed the plaintiff, and she sued the hospital under Title IX. *Id.* at 551–52. In determining that the residency program was an "education program or activity" under Title IX, the Third Circuit explained that the program required the plaintiff to train under faculty members, attend lectures, and take annual exams. *Id.* at 556. The hospital's affiliation with the medical school was also a factor showing that the program was an "education program or activity." *Id.* at 557.

Here, Arocho does not allege what "educational opportunities" and "vocational training activities" she was deprived of, other than her allegations about the one career day. The amended complaint, however, does not contain any allegations that show the career day, like the residency program in *Mercy Catholic*, had any educational requirements. See *id.* at 556–57. Nor does Arocho allege that she intended to participate in any specific Ohio University education program.

Case 4:21-cv-12492-SDK-EAS ECF No. 31-1, PageID.437 Filed 10/10/22 Page 5 of 5

Arocho v. Ohio University, Not Reported in Fed. Rptr. (2022)

Ultimately, Arocho's complaint does not sufficiently allege that she participated in or intended to participate in an Ohio University "education program or activity" under Title IX nor has she shown that she had a relationship with Ohio University, such as that in the *University of Kentucky* or *Mercy Catholic* cases. The district court did not err in concluding that Arocho failed to plausibly allege that she suffered discrimination under an Ohio University "education program or activity."

## IV. CONCLUSION

Because Arocho has not sufficiently alleged a Title IX claim, we **AFFIRM** the district court's judgment.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 819734

## Footnotes

1   Parsons pleaded guilty in July 2006 to Unlawful Sexual Conduct with a Minor in violation of Ohio Revised Code § 2907.04(A)(B)(3). Arocho also brought tort suits against both Parsons and Ohio University in Ohio state court.

2   Arocho also argues that Ohio University itself is an "education program or activity" but does not provide any caselaw in support. "[W]hat [Arocho] fail[s] to grasp, is that a plaintiff cannot simply assert that a federally-funded educational program discriminated against him or her on the basis of sex and automatically meets the 'under any education program or benefit' requirement." *Conviser v. DePaul Univ.*, 532 F. Supp. 3d 581, 593 (N.D. Ill. 2021). "Rather, a plaintiff must assert not only that the defendant provided educational programs or activities, but also that the *plaintiff was denied* access to or participation in those programs or activities." *Id.*

3   Ohio University argues that "career day was run by Arocho's high school, not the University" and that "nothing in Arocho's complaint alleges or suggests it was run by or in conjunction with the University." Viewing that amended complaint in the light most favorable to Arocho, she alleges that career day was an Ohio University program in partnership with her high school.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.