UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MICHIGAN, et al.,<br><br>    Defendants. | Case No:  21-CV-12492<br><br>Hon. Shalina D. Kumar<br>Magistrate Judge Elizabeth A. Stafford |
| Keith Altman (P81702)<br>The Law Office of Keith Altman<br>33228 West 12 Mile Road - Suite 375<br>Farmington Hills, MI 48334<br>(516) 456-5885<br>keithaltman@kaltmanlaw.com<br>*Attorney for Plaintiff* | Thomas L. Kent (P55863)<br>THE UNIVERSITY OF MICHIGAN<br>OFFICE OF THE VICE PRESIDENT &<br>GENERAL COUNSEL<br>1109 Geddes Avenue<br>Ruthven Building, Suite 2300<br>Ann Arbor, MI 48109-1079<br>(734) 764-0304<br>tomkent@umich.edu<br>*Attorneys for Defendants* |

**DEFENDANTS' SUPPLEMENTAL BRIEF ON THE
APPLICATION OF *AROCHO* AND *SNYDER-HILL***

A.   **While Both *Arocho a*nd *Snyder-Hill* Extend Standing to Nonstudents, The Sixth Circuit Still Requires That the Individual is Participating in or Attempting to Participate in a University's "Education Program or Activity."**

Nonstudents may bring a Title IX claim in limited circumstances where the individual's alleged injury occurs under a university's "education program or activity." The Sixth Circuit generally examines the relationship between the plaintiff and the defendant-University to determine whether a nonstudent is sufficiently tied to the University's educational opportunities to have standing. *See Doe v University of Kentucky*, 971 F3d553, 555 (6th Cir. 2020). However, the Sixth Circuit has disparately applied this standing requirement in recent cases, leading to

different outcomes in cases such as *Arocho v. Ohio University* and *Snyder-Hill v. Ohio State University*. No. 20-4239, 2022 WL 819734 (6th Cir. Mar. 18, 2022); 48 F.4th 686 (6th Cir. 2022). This Court should rely on the Sixth Circuit's reasoning in *Arocho* rather than *Snyder-Hill*, but regardless of which analytical standard is used, the result should be the same—Defendants' motion should be granted on standing as well as the many other asserted grounds.

In *Arocho, supra*, the court held that the plaintiff did not have standing to bring a Title IX claim because she failed to allege that she suffered discrimination under an Ohio University "education program or activity." *Id.* at *4. Arocho first met Officer Robert Parsons in 2005 at a career day hosted by Ohio University. *Id.* at *1. In the months following career day, Parsons sexually assaulted Arocho several times during "work hours and at work-related locations." *Id.* In 2019, Arocho sued Ohio University for violating Title IX because she believed the University had been deliberately indifferent to her sexual assault allegations. *Id.* However, as Arocho was not a student at Ohio University, the court first had to analyze whether to grant her nonstudent standing to bring a Title IX claim against the University. The court explained that a nonstudent only has standing against a university if they can connect their sexual assault to a university's "education program or activity." *Id.* at *3. Since Arocho did not pay Ohio University for any services and did not attempt to engage in Ohio University education programs in the future, her only relationship with the University was through career day. *Id.* at *4. The court determined that career day was not an Ohio University "education program or activity" because it did not have any educational requirements. *Id.* Thus, since Arocho could not show that she participated in or attempted to participate in any of Ohio University's "education programs or activities," the court refused to grant standing to Arocho's Title IX claim against the University. *Id.*

2

In contrast, the Court found that the four nonstudent plaintiffs in *Snyder-Hill, supra*, did have standing because they adequately alleged that they suffered discrimination under an Ohio State University "education program or activity." *Id.* at 708-09. In *Snyder-Hill*, 84 plaintiffs brought Title IX claims against OSU for its deliberate indifference to abuse perpetrated by Dr. Richard Strauss. *Id.* at 690. Of the 84 plaintiffs, only four were not students at the University: one was abused while participating in OSU's summer wrestling camp, two were abused during their employment as contract referees, and the fourth was abused while receiving a tour of OSU's athletic facilities. *Id.* at 707. The court determined that all three of these activities fell within the scope of an "education program or activity."  Reasoning that the wrestling camp plaintiff paid for services offered by the University, the contract referee plaintiffs attended and participated in a sporting event at the University, and the tour plaintiff attempted to participate in an education program because he believed he was receiving a tour of the University's facilities. *Id.* at 708-09. The court held that since all four plaintiffs were participating in or attempting to participate in one of OSU's "education programs or activities," each plaintiff had standing to bring a Title IX claim against the University. *Id.*

**B.      The Court Should Rely on the Sixth Circuit's Reasoning in *Arocho* Rather Than *Snyder-Hill* Due to its Factual Similarities to the Present Case.**

The Sixth Circuit should rely on *Arocho* because the case provides a clear articulation of the law and analyzes similar facts to the case at hand, whereas *Snyder-Hill* is likely to be appealed to the U.S. Supreme Court after a closely divided bench recently denied rehearing *en banc*.  First, *Arocho* is settled law that maintains the scope of Title IX. The *Arocho* court affirms precedent, holding that a nonstudent plaintiff may bring a Title IX claim, but only if they can point to an education program or activity of which they were denied a benefit. *Arocho* No. 20-4239, 2022 WL 819734 at *2; *see also University of Kentucky*, 971 F3d553, 558-59. On the other hand, *Snyder-*

3

*Hill* entirely disregards precedent, using dictum from a footnote in *Doe v. Brown University*, 896 F.3d 127,132 n.6 (1st Cir. 2018) to expand the scope of Title IX beyond its intended purpose and legal basis. *See Snyder-Hill* 48 F.4th 686 (Guy, Ralph B., dissenting). In dissent to the Court's decision to deny rehearing, Judge Thapar summarized his argument as follows:

> *The majority opinion is a vivid reminder that the choices one makes often "depend[] a good deal on where you want to get to." Lewis Carroll, Alice's Adventures in Wonderland 53 (Sterling Pub. Co. 2015). The destination here seemingly was never in doubt. But the majority opinion's path was not easy. What all did it require? Overriding a limitations period selected by a state legislature. Embracing a law's purported purpose, not its text. Dismissing an unbroken line of cases from the Supreme Court. Rejecting our own colleagues' conclusions as mere musings. Favoring a sister circuit's decision only to snub that decision at the first opportunity, thereby ensuring that every last plaintiff can circumvent the statute of limitations. Penalizing a university for commencing a fresh look into past misdeeds.* ***And wielding a law furthering educational gender equality to propel lawsuits by those with no connection to an educational program.*** *All of this to revive claims no one bothered to pursue for decades. (Emphasis provided).*

Also, the Sixth Circuit failed to correctly apply the reasoning provided in *Arocho* to *Snyder-Hill* when the court granted standing to a nonstudent plaintiff whose only tie to the University was through his attempted participation in a tour of the medical facilities. The court relies on the dictum in *Doe v. Brown University, supra*, stating that a nonstudent may bring a Title IX claim if they are "accessing university libraries or other resources, or attending campus tours, sporting events or other activities." However, the court does not explain how one's subjective belief that they are receiving a campus tour is dispositive on whether they have standing to bring a Title IX claim. It would be unreasonable to grant Title IX standing to any plaintiff who alleges a subjective intent to participate in a university's education program or activity in the future and would create a situation in which the universe of Title IX litigants would be limitless. The *Snyder-Hill* interpretation of standing would vastly expand the scope of Title IX beyond its original intent to monitor recipients of federal financial assistance. Instead, the Sixth Circuit should look to *Arocho*, and apply the long-settled standard for establishing standing in Title IX cases: that a nonstudent

plaintiff may bring a Title IX claim only if they were excluded from or discriminated against under an "education program or activity."

Further, the court should rely on *Arocho* because the facts square with the case at bar. *Arocho* is a single-plaintiff case where the nonstudent did not pay for Ohio University's services and only attended a program hosted by the University. Arocho's abuse, which occurred on multiple occasions, also did not interfere with her ability to receive any educational benefits. Here, Plaintiff is a nonstudent who has never paid for the University's services and who has only ever attempted to participate in an unofficial, unauthorized University internship which she was told to not disclose by her alleged abuser. Plaintiff does not allege that her abuse, although allegedly lasting for several years, deprived her of any educational benefits, as she was not involved in any education program or activity recognized or offered by the University. Since *Snyder-Hill* is a multi-plaintiff case where the nonstudents only alleged single instances of abuse, the court should instead use *Arocho* as its guide.

C.  **Plaintiff Still Lacks Standing to Bring a Title IX Claim Even Considering the Sixth Circuit's Standing Requirements in *Arocho a*nd *Snyder-Hill*.**

Under either analysis, Plaintiff lacks standing because she was not participating in or attempting to participate in a University of Michigan "education program or activity" in 2013 when the abuse first began, in 2015 when she was attempting a secreted internship at the Taubman Center, or in 2018 when she reported Dr. Schoenfeld's conduct to the University. Plaintiff first met Dr. Schoenfeld in 2013 through an online website, while she was a student at Michigan State University. Compl. ¶15-16. The two adults entered into an informed, personal, non-UM mentorship agreement where Dr. Schoenfeld would help Plaintiff with her career goals in exchange for an intimate relationship in which Plaintiff would maintain her appearance for him. Compl. ¶ 24. It was not until several years after this relationship, in 2015, that Dr. Schoenfeld gave

5

Plaintiff the unauthorized and undisclosed internship at the University of Michigan Taubman Center. Compl. ¶ 35. From the time that Plaintiff was first abused to the point at which she reported the abuse to the University's Title IX office, there is no evidence that Plaintiff was participating in or attempting to participate in any of the University's "education programs or activities." Under *Arocho*, Plaintiff would have needed to show that she was paying for the University's services or that she was engaged in an official University program that had educational benefits to assert nonstudent standing.

     First, there is no evidence that Plaintiff was participating in or attempting to participate in any of the University's education programs or activities leading up to her unofficial internship with the University in 2015. During this time, Plaintiff did not pay the University for its services, never alleged that her future career goals included admission to the University's Medical School (though having a career goal to one day attend a university should not confer Title IX standing), and was not engaged in any educational program at the University. The fact that Plaintiff was a student at a different university at the time of abuse does not impute liability on the defendant-University. *See Doe v Brown University*, 896 F3d 127 (1st Cir. 2018) (holding that the plaintiff could not use her status as a student at Providence College to assert standing against Brown University).

     Next, Plaintiff's assertion that her involvement with the Taubman Center constitutes an attempt to participate in a University's "education program or activity" does not save her claim as she was never eligible to receive educational benefits from an unauthorized internship. *Arocho* requires the nonstudent to connect their sexual assault to a university's "education program or activity." Here, Plaintiff attempts to connect her sexual assault to the unauthorized, secreted Taubman Center "internship" as the requisite University education program. However, similar to

6

how the court found the Ohio University career day (an actual sanctioned event) was not an "education program or activity" because it did not have any educational requirements, it is implausible that an unauthorized, secreted internship has any educational benefits conveyed with the University's knowledge and imprimatur. Further, Plaintiff was not attempting to participate in the so-called internship because she had knowledge that she was engaging in a fraudulent, unofficial internship.

Finally, when Plaintiff reported Dr. Schoenfeld's abuse in 2018, she was not participating or attempting to participate in any University "education program or activity." At this time, Plaintiff was no longer engaged in her unauthorized internship with the University and had not yet alleged any intent to pursue educational opportunities with the University in the future. Thus, there is no time at which Plaintiff can point to an educational program or activity, which she was denied. Even under *Snyder-Hill's* less stringent standards, Plaintiff cannot show that she was attempting to participate in any of the University's "education programs or activities" at any point throughout her personal mentorship relationship with Dr. Schoenfeld. Plaintiff therefore lacks standing to assert a Title IX claim against the University, and her claims fall well beyond the statute of limitations as there is no factual application of the *Snyder-Hill* "discovery rule" in this case.

For the reasons stated herein and in Defendants' motion, this Court should dismiss Plaintiff's claims in their entirety.

Respectfully submitted,

THE UNIVERSITY OF MICHIGAN
OFFICE OF THE VICE PRESIDENT
& GENERAL COUNCIL

By: /s/ *Thomas L. Kent*
Thomas L. Kent (P55863)
Ruthven Building, Suite 2300
1109 Geddes Avenue
Ann Arbor, MI 48109-1079
(734) 764-0304
tomkent@umich.edu

Dated: December 22, 2022    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN        )
                         ) ss
COUNTY OF WASHTENAW      )

I hereby certify that on December 22, 2022, I electronically filed *Defendant's Supplemental Brief on the Application of Arocho and Snyder-Hill* with the Clerk of the Court using the ECF System.

By: /s/ *Jennifer L. Traver*
Jennifer L. Traver
Legal Assistant