UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>      Plaintiff,<br><br>v.<br><br>DAVID BAUM et al.,<br><br>      Defendants. | Case No. 21-12492<br>Honorable Shalina D. Kumar<br>Magistrate Judge Elizabeth A. Stafford |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS (ECF NO. 22) AND ORDERING LIMITED DISCOVERY**

**I. Introduction**

Plaintiff Jane Doe, in her second amended complaint, brings a Title IX claim against defendant University of Michigan (University), 20 U.S.C. § 1681 (Title IX); a claim under 42 U.S.C. § 1983 against University employees David Baum, Elizabeth Seney, Margaret Gyetko, and Chung Owyang alleging they violated Title IX; and state law negligence claims against Baum and Seney.[1] ECF No. 20. Defendants moved to dismiss all claims, Doe responded, and defendants replied. ECF Nos. 22, 25, 26. Defendants then filed a notice of supplemental authority (which was

---

[1] Plaintiff also brought claims against the University of Michigan Health System, which were dismissed by stipulation. ECF No. 23.

Page **1** of **12**

incorrectly docketed as a supplemental brief), bringing to the Court's attention two recently decided Sixth Circuit cases, *Arocho v. Ohio Univ.*, 2022 WL 819734 (6th Cir. Mar. 18, 2022) and *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). ECF No. 31. The Court ordered supplemental briefs on the application of these cases, which the parties submitted. ECF Nos. 32, 33, 34. The Court heard oral argument on March 8, 2023. ECF No. 35. This motion is now ripe for decision.

## II. Factual Background

In 2013, Jane Doe,[2] a nineteen-year-old student at Michigan State University, met Dr. Philip Schoenfeld, a forty-nine-year-old gastroenterologist at the University, online. ECF No. 20, PageID.271, 273. Doe hoped to attend medical school. *Id.* at PageID.72. Doe and Schoenfeld entered a "mentoring relationship with intimacy", in which Schoenfeld would pay Doe $1250 per month and help her attain her goal of attending medical school, and Doe would have sex with Schoenfeld and "maintain her appearance". *Id.* at PageID.272-73. Over the course of this relationship, Doe alleges Schoenfeld raped her using physical force, raped her by having sex with her when she was too intoxicated to consent, coerced her

---

[2] This Court granted plaintiff permission to use a pseudonym. ECF No. 16.

Page **2** of **12**

into unsafe sexual practices, knowingly gave her herpes, and engaged in other acts of violence, coercion, and manipulation. *Id.* at PageID.273-76.

In 2015, Schoenfeld offered Doe an internship at the Taubman Center at the University. *Id.* at PageID.276. He advised Doe that it would help her secure admission to the University of Michigan School of Medicine, which she hoped to attend. *Id.* Doe accepted and began her internship without providing any identification or undergoing a background check or HIPAA compliance training. *Id.* at PageID.277. However, he assured her that he obtained permission from the University before offering her the internship. *Id.* During the internship, Schoenfeld instructed Doe to tell his colleagues that she was a family friend. *Id.* Throughout their relationship, Schoenfeld communicated with Doe using his University email address and pager. *Id.* at PageID.275-76. Doe ultimately ended the internship and her relationship with Schoenfeld when he refused to write her a letter of recommendation for medical school. *Id.* at PageID.278.

In August 2017, after Doe had ended their relationship, Schoenfeld approached her and stalked her at an off-campus Walgreens. *Id.* at PageID.279.

In early 2018, Doe contacted the University Title IX office to report Schoenfeld for rape and "predatory behavior." *Id.* at PageID.280. In February 2018, she met with defendants Baum and Seney, the University's Title IX Coordinator and Assistant Coordinator. *Id.* Baum and Seny informed Doe they could not open a formal investigation because Doe was not a student at the University, but that they would conduct an "informal investigation" given the serious nature of the allegations. *Id.* In April 2018, Baum emailed Doe to inform her Schoenfeld's adjunct professorship with the University was "discontinued" and that he had been informed of her allegations. *Id.* In June 2018, Baum emailed Doe stating that Schoenfeld was terminated and had been the subject of disciplinary action based on her reports. *Id.*

Baum also suggested Doe meet with defendant Owyang, the Chief of Gastroenterology at the University (Schoenfeld's department). Doe met with Owyang in October 2018. *Id.* at PageID.281. Owyang informed Doe he had terminated Schoenfeld based on her report and the resulting informal investigation. *Id.*

However, Doe later learned there is no record of any disciplinary action against Schoenfeld by the University, Schoenfeld was never

informed of her Title IX report, and that, rather than being terminated, Schoenfeld elected to end his position during a phone call with Owyang in April 2018. *Id.* at PageID.282. The University allowed Schoenfeld continued access to his email account through August 2018. *Id.*

In September 2019, Doe learned through a public social media post that Schoenfeld was interviewing for a position at Stanford University that would involve both practicing medicine and teaching. *Id.* Out of concern that Schoenfeld would use this role to target Stanford students in the way he targeted Doe, Doe contacted Stanford's Title IX office and reported her experience with him. *Id.* After Doe began making allegations against him, Schoenfeld brought a defamation suit against her in California. In order to settle that case, Doe eventually sent written statements to several private parties retracting some of her allegations against Schoenfeld. *See, e.g.*, ECF No. 13-2, PageID.152-53.  Doe then filed this suit. ECF No. 1.

### III.   Analysis

Defendants argue Doe lacks standing to bring a Title IX claim against them because she was not a student. Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A nonstudent may have standing to bring a Title IX claim against a university

if they experienced discrimination while participating in, or attempting to participate in, an education program or activity. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 707-08 (6th Cir. 2022). An "'education program or activity' is defined broadly and extends to situations in which individuals are, for example, accessing university libraries or other resources, or attending campus tours, sporting events, or other activities." *Id.* at 708.

"Where a defendant challenges a plaintiff's standing to bring suit, the Court should first consider whether it has subject matter jurisdiction pursuant to Rule 12(b)(1) before it considers the substantive merits of a pleading pursuant to Rule 12(b)(6)." *City of Memphis v. Wells Fargo Bank, N.A.*, 2011 WL 1706756, at *4 (W.D. Tenn. May 4, 2011) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946); *Coal Operators and Assocs., Inc., v. Babbitt*, 291 F.3d 912 (6th Cir. 2002)). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face or attack the factual basis for jurisdiction." *City of Memphis*, 2011 WL 1706756, at *4 (citing *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004)). Where there is a facial challenge to standing, the Court must consider all the allegations in the complaint as true. *Id.* Where there is a factual challenge to standing, the Court may consider evidence outside the pleadings to resolve factual

Page **6** of **12**

disputes and must weigh the evidence. *Id.* "And unlike Motions to Dismiss under Fed. R. Civ. P. 12(b)(6), a court may allow limited discovery and consider evidence in determining a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)." *Sierra Club v. DTE Energy Co.*, 2013 WL 6910431, at *4 (E.D. Mich. Oct. 7, 2013), report and recommendation adopted, 2014 WL 29127 (E.D. Mich. Jan. 3, 2014).

Doe argues her internship at the University's Taubman Center was an education program or activity sufficient to confer standing. ECF No. 34. She alleges Schoenfeld represented the internship as an educational opportunity for her, one which he had received the University's permission to offer her. ECF 20, PageID.276-77. She further alleges that, for educational purposes, she regularly observed medical procedures and assisted Schoenfeld in reviewing patient records and preparing for patient cases. *Id.* at PageID.275-77. While at the Taubman Center, she wore blue scrubs and communicated with Schoenfeld on his University-issued pager. *Id.* She also alleges she hoped to be admitted to the University's medical school. *Id.* at PageID.276-77.

Defendants dispute that Doe has standing, raising both a facial and factual challenge. Defendants contend that, on the facial level, participating

in an internship does not confer standing on a nonstudent, and that even if it did, on the factual level, Doe did not have a legitimate internship at the University, but rather an "unofficial, unauthorized" one not recognized by the University. ECF No. 22, PageID.315-17; ECF No. 33.

As to the facial issue, Doe has a colorable claim that participating in an educational internship, even an unofficial one, is sufficient to confer standing. The Sixth Circuit has instructed that courts should define "education program or activity" broadly. *Snyder-Hill*, 48 F.4th at 708. A legitimate internship, in which an intern observes and participates in various aspects of a profession as an educational and training opportunity, is unquestionably an education program or activity when offered by a university. And even Doe's unofficial internship could confer standing upon her.

In the recent *Snyder-Hill* case, the Sixth Circuit held that several nonstudents had standing to sue under Title IX. *See id.* at 707-09. One of those nonstudent plaintiffs was assaulted by the athletic team doctor while that doctor gave him an unofficial tour of the campus athletics facility. *Id.* The Sixth Circuit reasoned that plaintiff was *attempting* to participate in "education program or activity" because he was a prospective student and

believed he was receiving a bona fide tour of the school's facilities by a school employee, and therefore hand standing. *Id.* Here, Doe alleges she was attempting to participate in what she believed was a bone fide education program—a educational internship she accepted in the hopes of learning about the practice of medicine and bolstering her eventual application to the University's medical school—that was offered to her by a school employee. As in *Snyder-Hill*, the fact that it "was not a bona fide education activity because it was merely a guise for [the perpetrator's] abuse" does not destroy her claim for standing. *Id.* at 709.

Defendants argue this case is similar to *Arrocho v. Ohio University*, an unpublished case in which the Sixth Circuit found a nonstudent lacked standing to sue under Title IX. 2022 WL 819734 (6th Cir. Mar. 18, 2022). In *Arrocho*, the nonstudent plaintiff was repeatedly sexually assaulted by a university police officer. *Id.* at *1. She argued she had standing because she met the perpetrating employee at a university-sponsored career day event, which she argued was an "education program or activity." *Id.* at *3. The court found this insufficient to confer standing, because her connection to the university was too attenuated. *Id.* at *4. The court noted she merely attended a one-day event and did not make any factual allegations about

Page **9** of **12**

the education or vocational training opportunities involved, did not pay the university for any services, and did not allege she was participating in nor planned to participate in any specific, more robust education program or activity. *Id.*

Here, the internship Doe alleges involved significant, regular, ongoing presence at the university medical center. This is far more robust a connection than the one-day career event the *Arrocho* plaintiff attended. Further, she alleges it involved specific educational and vocation training elements, including observing medical procedures and participating in case preparation with the doctor. And she claims she intended to apply for graduate school at the University (where she is now enrolled as a graduate student). Because these cases are distinguishable, the Court declines to follow *Arrocho* here. The Court finds that, on a facial level, Doe adequately alleges she was subject to discrimination while participating, or at least attempting to participate, in an education program or activity.

However, the Court requires more information to resolve the factual standing issue and determine whether it possesses subject matter jurisdiction over the case. Accordingly, the parties are ordered to engage in limited discovery as to the nature and circumstances of Doe's alleged

internship at the Taubman Center and whether the University knew of it. This includes the duration and frequency of Doe's presence at the Taubman Center and in University medical facilities; what activities Doe engaged in while at the Taubman Center or other University facilities; Doe's participation in and observation of medical research and patient care; when and whether University officials knew or should have known of her presence at the Taubman Center and in University facilities; whether the University knew or should have known of Doe's participation in and observation of medical research and patient care; when and whether University officials authorized, implicitly or explicitly, her presence, observation, and/or participation; and participation in any other education programs or activities at the University through Schoenfeld's "mentorship".

Because it is not yet satisfied it possesses jurisdiction to decide this case, the Court declines to consider defendants' other arguments at this time. Defendants may reassert these arguments in future motions.

### IV.   Conclusion

Defendants' motion to dismiss (ECF No. 22) is **DENIED WITHOUT PREJUDICE**. **IT IS FURTHER ORDERED** that the parties are to engage in limited discovery as to Doe's participation in education programs or

activities, including the nature and circumstances of Doe's alleged internship at the Taubman Center.

Dated: March 24, 2023

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge