# UNITED STATES DISTRICT COURT

# IN THE EASTERN DISTRICT OF MICHIGAN

JANE DOE,

     Plaintiff,

v.

UNIVERSITY OF MICHIGAN, DAVID
BAUM, ELIZABETH SENEY, MARGARET
GYTEKO, AND DR. CHUNG OWYANG,

     Defendants.

Case No:  21-CV-12492

Hon. Shalina D. Kumar
Magistrate Judge Elizabeth A. Stafford

_____/

Keith Altman (P81702)
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, MI 48334
(516) 456-5885
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff*

Thomas L. Kent (P55863)
THE UNIVERSITY OF MICHIGAN
OFFICE OF THE VICE PRESIDENT &
GENERAL COUNSEL
1109 Geddes Avenue
Ruthven Building, Suite 2300
Ann Arbor, MI 48109-1079
(734) 764-0304
tomkent@umich.edu
*Attorneys for Defendants*

_____/

## DEFENDANTS' MOTION
## TO DISMISS PURSUANT TO FRCP 12

Defendants, by and through their counsel, the Office of the Vice President and General

Counsel of the University of Michigan, move this Court for dismissal pursuant to FRCP 12 for the

reasons stated in the accompanying Brief.

Respectfully submitted,

THE UNIVERSITY OF MICHIGAN
OFFICE OF THE VICE PRESIDENT
& GENERAL COUNSEL


By:     /s/ *Thomas L. Kent*
        Thomas L. Kent (P55863)
        1109 Geddes Avenue
        Ruthven Building, Suite 2300
        Ann Arbor, MI 48109-1079
        (734) 764-0304
        tomkent@umich.edu
Dated:  November 14, 2023        *Attorneys for Defendants*


## CERTIFICATE OF SERVICE

STATE OF MICHIGAN          )
                           )  ss
COUNTY OF WASHTENAW        )

 I hereby certify that on November 14, 2023, I electronically filed *Defendants' Motion to Dismiss Pursuant to FRCP 12* with the Clerk of the Court using the ECF System.


By:     /s/ *Jennifer L. Traver*
        Jennifer L. Traver
        Legal Assistant

## UNITED STATES DISTRICT COURT

## IN THE EASTERN DISTRICT OF MICHIGAN

JANE DOE,

     Plaintiff,

v.

UNIVERSITY OF MICHIGAN, DAVID
BAUM, ELIZABETH SENEY, MARGARET
GYTEKO, AND DR. CHUNG OWYANG,

     Defendants.

Case No:  21-CV-12492

Hon. Shalina D. Kumar
Magistrate Judge Elizabeth A. Stafford

_____/

Keith Altman (P81702)
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, MI 48334
(516) 456-5885
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff*

Thomas L. Kent (P55863)
THE UNIVERSITY OF MICHIGAN
OFFICE OF THE VICE PRESIDENT &
GENERAL COUNSEL
1109 Geddes Avenue
Ruthven Building, Suite 2300
Ann Arbor, MI 48109-1079
(734) 764-0304
tomkent@umich.edu
*Attorneys for Defendants*

_____/

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

INDEX OF AUTHORITIES ........................................................................................... iv

ISSUES PRESENTED .................................................................................................. viii

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ........................... viii

INDEX OF EXHIBITS ................................................................................................... ix

I.      BACKGROUND ................................................................................................. 1

II.     ARGUMENT ...................................................................................................... 4

        A.     Standard of Review for FRCP 12(b)(1) and 12(b)(6) ............................ 4

        B.     Plaintiff Lacks Standing to Bring a Title IX Claim ............................... 6

               1.     What was the duration and frequency of Doe's presence at the
                      Taubman Center and in University medical facilities; what
                      activities did Doe engage in while at the Taubman Center or other
                      University facilities; and when and whether University officials
                      knew or should have known of her presence at the Taubman
                      Center and in University facilities? ............................................... 7

               2.     What was Doe's participation in and observation of medical
                      research and patient care; and whether the University knew or
                      should have known of Doe's participation in and observation of
                      medical research and patient care? ............................................. 11

               3.     When and whether University officials authorized, implicitly or
                      explicitly, her presence, observation, and/or participation; and
                      participation in any other education programs or activities at the
                      University through Schoenfeld's "mentorship"? ...................... 11

        C.     Even if Plaintiff Has Standing, Both Her Title IX Claim Against the University
               and §1983 Claims Against the Individual Defendants Are Time Barred ............. 14

        D.     Even if Plaintiff Had Standing and Even if Her Claim Was Not Time
               Barred, Her Amended Complaint Fails to State a Claim of Deliberate
               Indifference Under Title IX Because She Has Failed to Allege Post-Actual
               Knowledge Harassment .......................................................................... 16

E.   There Is No Individual Liability Under Title IX.  Plaintiff's §1983 Claims
      Against the Individual Defendants Cannot Be Based Upon a Violation of
      Title IX and Therefore Must Be Dismissed for Failure to State a Claim ..............18

F.   Even if Plaintiff Could Use Alleged Title IX Violations as the Basis for
      her §1983 Claims Against the Individual Defendants, and Even if Those
      Claims Were Not Time Barred, Individual Defendants Are Entitled to
      Qualified Immunity........................................................................................20

G.   As Plaintiff's Federal Claims Fail, this Court Should Not Retain Jurisdiction
      Over Plaintiff's State Law Claims, Which Are Otherwise Barred by State Law
      Immunity and Failure to Provide Notice Pursuant to the Michigan Court of
      Claims Act. ....................................................................................................21

III.   RELIEF REQUESTED....................................................................................... 22

CERTIFICATE OF SERVICE .................................................................................. 22

# **INDEX OF AUTHORITIES**

## **Cases**

*Arocho v. Ohio Univ.,* 469 F. Supp. 3d 795 (S.D. Ohio 2020), *reconsideration denied,*
No. 2:19-CV-4766, 2020 WL 6949098 (S.D. Ohio Oct. 28, 2020) ................................. *passim*

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................. 5

*Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)............................................ 4

*Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ............................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct 1955, 167 L.Ed.2d 929 (2007) ............. 5

*Cartwright v. Garner*, 751 F.3d 752 (6th Cir. 2014) ..................................................................... 4

*Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)....................... 6

*Cox v. Sugg,* 484 F.3d 1062 (8th Cir. 2007) ................................................................................. 19

*Crandell v. New York Coll. of Osteopathic Med*., 87 F. Supp. 2d 304 (S.D.N.Y. 2000) ............. 12

*Davis v. Monroe Cty. Bd. Of Ed.,* 526 U.S. 629 (1999*)*................................................................. 7

*Dibbern v. Univ. of Michigan*, No. 12-15632, 2013 WL 6068808, at *7
(E.D. Mich. Nov. 18, 2013) ..................................................................................................... 15

*DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511 (6th Cir. 2004)....................................... 4

*Doe v. Centreville Pub. Sch.,* No. 1:17-CV-317, 2019 WL 10890258,
(W.D. Mich. Apr. 29, 2019)..................................................................................................... 16

*Doe v. Univ. of Kentucky*, 959 F.3d 246 (6th Cir. 2020) ............................................................. 17

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007) .............................. 5

*Evans et al, v. City of Ann Arbor, et al., Defendants. Additional Party Names: Prop. Mgmt.
Specialists, Inc.,* No. 21-10575, 2022 WL 586753 (E.D. Mich. Feb. 25, 2022) ...................... 15

*Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 129 S. Ct. 788,
172 L.Ed.2d 582 (2009) ........................................................................................................... 18

*Forrester v. Clarenceville Sch. Dist.,* No. 20-12727, 2021 WL 1812700
(E.D. Mich. May 6, 2021)................................................................................................ viii, 15

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020) .................................................... viii, 15

*Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998) ............................ *passim*

*GEICO Corp. v. Autoliv, Inc.,* 345 F.Supp.3d 799 (E.D. Mich. 2018).......................................... 14

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ..................... viii, 20

*Harper v. Auto Alliance International, Inc.*, 392 F.3d 195 (6th Cir. 2004)................................... 21

*Jane Doe v. Brown University*, 270 F. Supp. 3d 556 (D.R.I. 2017),
    *aff'd*, 896 F.3d 127 (1st Cir. 2018)..................................................................................... *passim*

*K.T. v. Culver-Stockton Coll.,* No. 4:16-CV-165 CAS, 2016 WL 4243965
    (E.D. Mo. Aug. 11, 2016), *aff'd,* 865 F.3d 1054 (8th Cir. 2017)................................................. 7

*Lillard v. Shelby County Board of Ed.*, 76 F.3d 716 (6th Cir. 1996)..................................... viii, 15

*Lipian v. Univ. of Michigan,* 453 F. Supp. 3d 937 (E.D. Mich. 2020), *motion to certify appeal
    denied*, No. 18-13321, 2020 WL 3402013 (E.D. Mich. June 19, 2020)................................... 20

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).................... 6

*Malley v. Briggs,* 475 U.S. 335, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986) .................................. 20

*McCoy v. Bd. of Educ., Columbus City Schs.*, 515 F. App'x 387 (6th Cir. 2013) ....................... 17

*Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006) ................................................. 21

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993)...................................... 14

*Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 193 L.Ed.2d 255 (2015)...................................... 20

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046 (6th Cir. 2011).................... 6

*Packard v. Farmers Insurance Co. of Columbus*, 423 Fed. Appx. 580 (6th Cir. 2011)........ viii, 21

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125 (6th Cir. 1996)............................ 5

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)............................................ 6

*Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918 (6th Cir. 2002)...................................... 6

*Seamons v. Snow,* 84 F.3d 1226 (10th Cir. 1996)....................................................................... 19

*Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 689 (6th Cir. 2022), cert. denied sub nom.
  *The Ohio State Univ. v. Steve Snyder-Hill*, 143 S. Ct. 2659 (2023)..................................*passim*

*Warth v. Seldin*, 422, U.S. 490 (1975) ........................................................................... 6

*White v. Am. Educ. Servs.,* No. 2:21-CV-10349, 2021 WL 6340986,
  at *2 (E.D. Mich. Dec. 22, 2021), *report and recommendation adopted,* No. 21-10349, 2022
  WL 94896 (E.D. Mich. Jan. 10, 2022)........................................................................ 4

*Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592 (E.D. Tex. 2016) ........................ viii, 18, 19

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007) ................. 17, 19

## Statutes

42 U.S.C §1983 ....................................................................................................*passim*

28 U.S.C. §13671 ..................................................................................................... 21

## Other Authorities

FRCP 12(b)(1) ......................................................................................................... 4

FRCP 12(b)(6) ....................................................................................................... 14

FRCP 8(c) ............................................................................................................. 14

FRCP Rule 11 ........................................................................................................ 4

## **ISSUES PRESENTED**

I.    Should Plaintiff's Title IX claim against the University of Michigan ("University") be dismissed because she lacks standing to bring a Title IX claim against the University?

Defendants Answer:            Yes
This Court Should Answer:   Yes


II.   Should Plaintiff's Title IX claim against the University and §1983 claims against the individual Defendants be dismissed because they are time barred?

Defendants Answer:            Yes
This Court Should Answer:   Yes


III.  Should Plaintiff's Title IX claim against the University be dismissed because she fails to allege facts establishing that the University was "deliberately indifferent" to her Title IX rights?

Defendants Answer:            Yes
This Court Should Answer:   Yes


IV.   Should Plaintiff's §1983 claims against the individual defendants be dismissed because they are based upon alleged violations of Title IX and nothing else?

Defendants Answer:            Yes
This Court Should Answer:   Yes


V.    Should Plaintiff's §1983 claims against the individual defendants be dismissed based on qualified immunity because no constitutional violation has been alleged?

Defendants Answer:            Yes
This Court Should Answer:   Yes


VI.   Should this Court retain supplemental jurisdiction over Plaintiff's State law claims?

Defendants Answer:            No
This Court Should Answer:   No

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

*Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 689 (6th Cir. 2022), cert. denied sub nom.
   *The Ohio State Univ. v. Steve Snyder-Hill*, 143 S. Ct. 2659 (2023)

*Arocho v. Ohio Univ.,* 469 F. Supp. 3d 795 (S.D. Ohio 2020), *reconsideration denied,*
   No. 2:19-CV-4766, 2020 WL 6949098 (S.D. Ohio Oct. 28, 2020)

*Forrester v. Clarenceville Sch. Dist.,* No. 20-12727, 2021 WL 1812700 (E.D. Mich.
   May 6, 2021)

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853, n.8 (6th Cir. 2020)

*Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998)

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)

*Lillard v. Shelby County Board of Ed.*, 76 F.3d 716 (6th Cir. 1996)

*Packard v. Farmers Insurance Co. of Columbus*, 423 Fed. Appx. 580 (6th Cir. 2011)

*Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592 (E.D. Tex. 2016)

## <u>INDEX OF EXHIBITS</u>

Exhibit 1 – 9/26/23 and 10/9/23 Emails from Defendants Counsel to Plaintiff's Counsel ........... 2

Exhibit 2 – Schoenfeld Declaration ................................................................................ 2

Exhibit 3 – Maki and Schroeder Declarations ................................................................ 3

Exhibit 4 – Complaint and Counterclaim in California Superior Court ......................... 3

Exhibit 5 – Retractions Letters from Plaintiff ............................................................... 3

Exhibit 6 – Michigan Medicine Visiting Observer Policy and Required Forms ............. 7

Exhibit 7 – 5/21/15 from Plaintiff to Dr. Schoenfeld ................................................... 8

Exhibit 8 – Plaintiff's 6/11/15 Notes ...........................................................................

Exhibit 9 – Jane Doe Deposition Transcript .................................................................. 7

Exhibit 10 – Dr. Chung Owyang Deposition Transcript ................................................ 9

Exhibit 11 – Rebecca Hulea Deposition Transcript ....................................................... 9

Exhibit 12 – Jeff Holden Deposition Transcript ............................................................ 9

Exhibit 13 – Theresa Nester Deposition Transcript....................................................... 10

## I. BACKGROUND

Defendants filed a Motion to Dismiss on May 25, 2022 on several grounds, which are all re-asserted in this motion. This Court denied Defendants' original motion without prejudice and in this Court's Opinion and Order dated March 24, 2023 the parties were ordered to engage in limited discovery on the issue of Title IX standing, to wit; the nature and circumstances of Doe's alleged internship at the Taubman Center and whether the University knew of it. This includes:

1.    the duration and frequency of Doe's presence at the Taubman Center and in University medical facilities;

2.    what activities Doe engaged in while at the Taubman Center or other University facilities;

3.    Doe's participation in and observation of medical research and patient care;

4.    when and whether University officials knew or should have known of her presence at the Taubman Center and in University facilities;

5.    whether the University knew or should have known of Doe's participation in and observation of medical research and patient care;

6.    when and whether University officials authorized, implicitly or explicitly, her presence, observation, and/or participation; and participation in any other education programs or activities at the University through Schoenfeld's "mentorship."

For purposes of the limited discovery ordered by the Court, UM has produced for deposition the former Gastroenterology Division Chief, **Dr. Chung Owyang**; the former Department Administrator of Gastroenterology **Jeff Holden**; the former executive assistant to the Chair **Theresa Nester**; Michigan Medicine Compliance Director **Rebecca Hulea**; and has also disclosed to Plaintiff's counsel that **Dr. Grace Elta**, former Clinical Chief of Gastroenterology

1

may have relevant knowledge.   UM cannot produce Dr. Elta as she retired 4 years ago.

Defendants' counsel also followed up with an additional communication to Plaintiff's counsel on

10/9/23 with an update on communications search efforts. (*See* 9/6/23 Email and 10/9/23 Email

attached as **Ex 1**).   These are the individuals who were in departmental leadership and

knowledgeable about required shadowing policy -- and who would have been made aware of any

proper shadowing request had it been made by **Dr. Philip Schoenfeld**.   Not unsurprisingly, due to

the prior defamation case against her, Plaintiff has not attempted to depose Dr. Schoenfeld despite

the fact that he is readily accessible through his counsel, Brian Koncius, Bogas & Koncius.

However, Defendants have secured a Declaration from Dr. Schoenfeld attached as **Ex 2** in which

he confirms, among other things, that 1) he did not seek approvals for Plaintiff to shadow him from

the Chair or administrative leadership in the Department of Gastroenterology, nor did he inform

UM Compliance or any other unit at UM of the arrangement, and 2) UM administration and

leadership did not have knowledge or approve of the shadowing arrangement.   Dr. Schoenfeld's

Declaration refutes any inadmissible hearsay offered by Plaintiff.

Plaintiff filed her initial Complaint on October 22, 2021. Due to deficiencies in the

pleadings, the parties agreed to a stipulation and order to allow Plaintiff to amend her Complaint,

and reserving the right to amend again, if necessary, as a matter of course. (ECF No. 6).   On

January 25, 2022, Plaintiff filed a First Amended Complaint alleging:

- a violation of Title IX against the University of Michigan ("University");

- a violation of Title IX under 42 U.S.C. §1983 against individual Defendants Baum, Seney, Gyetko and Owyang; and

- state law negligence against individual Defendants Baum and Seney.

On March 9, 2022, this court granted Plaintiff's motion to proceed as Jane Doe.  On March

10, 2022, Defendants filed a Motion to Dismiss all counts.  Plaintiff did not respond to that motion,

but instead filed a Second Amended Complaint on May 6, 2022. Plaintiff's Second Amended Complaint added another Title IX Count against a new party **University of Michigan Health System**,[1] followed by a summons on May 9, 2022. Thereafter, Plaintiff stipulated to the dismissal of UMHS and the related Count in her Second Amended Complaint.  Defendants refiled their Motion to Dismiss on May 25, 2022 and this Court issued its Opinion and Order denying Defendants' motion without prejudice on March 24, 2023 - and further ordered limited discovery on the issue of Title IX standing.

This case involves a personal relationship Plaintiff had many years ago with Dr. Philip Schoenfeld, who had a dry adjunct appointment at UM that ended in August 2018.  During the time of their personal relationship, and all other times in the Second Amended Complaint, Plaintiff had no student, employment or other programmatic relationship with UM. (*See,* Maki and Schroeder Declarations, **Ex 3**).  After the relationship ended, Plaintiff engaged in a campaign of ruinous and defamatory accusations against Dr. Schoenfeld that resulted in a defamation lawsuit against her. (*See,* Complaint and Counterclaim in California Superior Court, **Ex 4**).  As part of the resolution of that lawsuit, Plaintiff retracted, in a signed and notarized writing, the very allegations on which she now relies to support her claims against Defendants.  Plaintiff's retraction was published to six UM employees. (*See*, Letters and Retraction, **Ex 5**).

For the reasons below, Plaintiff's claim against the University must be dismissed in its entirety for lack of jurisdiction and failure to state a claim because Plaintiff lacks standing to bring a Title IX private action for damages, her claim is barred by the statute of limitations, and she has failed to plead facts supporting her claim that the University was deliberately indifferent to her

---

[1] UMHS became "Michigan Medicine" in 2017.  Michigan Medicine is a branding name and a wholly owned subsidiary of the University of Michigan, for which the correct institutional name to sue and be sued is "Board of Regents of the University of Michigan." Michigan Medicine does not have a legal identity separate from the Board of Regents of the University of Michigan.

rights under Title IX.  Specifically, after two amendments, Plaintiff has failed to plead any facts of post-actual knowledge harassment.

Likewise, Plaintiff's claims against the individual Defendants are time-barred and must also be dismissed because there is no individual liability under Title IX, and she cannot legally nest a Title IX claim as a §1983 violation. Therefore, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss in its entirety, with prejudice together with an award of costs and fees under FRCP Rule 11, and further request that this Court decline to exercise supplemental jurisdiction over the remaining state claims.

## II. ARGUMENT

### A.      Standard of Review for FRCP 12(b)(1) and 12(b)(6)

A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *White v. Am. Educ. Servs.,* No. 2:21-CV-10349, 2021 WL 6340986, at *2 (E.D. Mich. Dec. 22, 2021), *report and recommendation adopted*, No. 21-10349, 2022 WL 94896 (E.D. Mich. Jan. 10, 2022).  Pursuant to *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014), in the case of a factual attack, this Court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, *including evidence outside of the pleadings*, and has the power to weigh the evidence and determine its effect on the Court's authority to hear the case.  Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004).  When faced with a question of subject matter jurisdiction, a court must address that issue before all others.  *Gross v. Hougland,* 712 F.2d 1034, 1036 (6th Cir.1983); *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990) (citing *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946))

("The Court will consider the 12(b)(1) motion first, as the 12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking."). "[A] plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.,* 505 F.3d 598, 606 (6th Cir.2007).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

Additionally, to survive a Rule 12(b)(6) motion, the complaint must contain specific factual allegations, and not just legal conclusions, in support of each claim. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A complaint is subject to dismissal unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief." *Id.* at 679. In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668, 129 S. Ct. 1937. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).

Moreover, the Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details in order to draft a 'plausible complaint.' " *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted).  Put another way, complaints must contain "plausible statements as to when, where, in what or by whom," in order to avoid merely pleading an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011) and *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

The Sixth Circuit has also held that when considering a Rule 12(b)(6) motion, "a court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (*quoting Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). For this reason, Defendants have included as exhibits Plaintiff's prior written retractions of the very allegations she has made in her Second Amended Complaint, as well as Declarations establishing conclusively that Plaintiff has no standing to bring a Title IX claim against the University.

**B.      Plaintiff Lacks Standing to Bring a Title IX Claim**

It is Plaintiff's burden to establish standing.  Standing to pursue a claim is a threshold question in every federal case. *Warth v. Seldin*, 422, U.S. 490, 498 (1975).  "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)).  In Defendants' first Motion to Dismiss they relied

on a line of cases that was rejected by the Court, to wit: *Arocho v. Ohio Univ.,* 469 F. Supp. 3d 795 (S.D. Ohio 2020), *reconsideration denied,* No. 2:19-CV-4766, 2020 WL 6949098 (S.D. Ohio Oct. 28, 2020), *K.T. v. Culver-Stockton Coll.,* No. 4:16-CV-165 CAS, 2016 WL 4243965 (E.D. Mo. Aug. 11, 2016), *aff'd,* 865 F.3d 1054 (8th Cir. 2017), *Jane Doe v. Brown University*, 270 F. Supp. 3d 556, 562 (D.R.I. 2017), *aff'd*, 896 F.3d 127 (1st Cir. 2018), and *Davis v. Monroe Cty. Bd. Of Ed.,* 526 U.S. 629 (1999*).*  Defendants argued that the net effect of *Arocho, Davis, Gebser, K.T.* and *Doe* foreclosed non-students from accessing a private right of action under Title IX. Defendants re-adopt that reasoning here.

Notwithstanding Defendants' reliance and argument on the above line of authority, in its March 24, 2023 Opinion and Order, this Court stated that the Sixth Circuit's decision in *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 689 (6th Cir. 2022), cert. denied sub nom. *The Ohio State Univ. v. Steve Snyder-Hill*, 143 S. Ct. 2659 (2023) was the proper controlling authority on the question of standing and ordered the parties to address the following issues under the standard adopted in *Snyder-Hill* (the issues have been consolidated into three related groups for ease of discussion):

1. **What was the duration and frequency of Doe's presence at the Taubman Center and in University medical facilities; what activities did Doe engage in while at the Taubman Center or other University facilities; and when and whether University officials knew or should have known of her presence at the Taubman Center and in University facilities?**

To begin, there are no records of the frequency and duration of Plaintiff's presence at the Taubman Center because the "mentorship" was secreted and Plaintiff did not have an ID badge to track.  (Doe Dep, 74).  Nor did she complete the required application for an internship, go through HIPAA training and compliance, complete the vaccination and inoculation form or sign a Code of Conduct attestation.  (*See* Doe Dep, 44, 106 (**Ex 9**); and see Shadowing Application and Related

Documents, **Ex 6**).  And, she did not even explore whether these steps were required.  (Doe Dep, 79).  According to Plaintiff's testimony, she came to Michigan Medicine about once a week in the winter and summer of 2015 - **but less than 20 times**.  (Doe Dep, 58, 109).  However, the only email record that speaks to the frequency of her visits reveals that as of May 21, 2015, she had only "shadowed" Dr. Schoenfeld twice.  (*See* 5/21/15 Email, **Ex 7**).

Plaintiff also was asked in her deposition whether she kept a calendar or diary of her on-site visits, and she testified "no."  (Doe Dep, 107).  The only way to reconstruct her time at Michigan Medicine, according to Plaintiff, would be to cross reference the two of pages notes she retained (from one day) against "actual patient records" - which is clearly an impermissible use of patient records under HIPAA and, in any event, would not have the effect of reconstructing her time at Michigan Medicine. (Doe Dep, 108 and Plaintiff's Notes, *see* **Ex 8**).

Plaintiff left her unauthorized internship abruptly in August 2015 after a dispute with Dr. Schoenfeld about a recommendation letter that he refused to give her.  (Doe Dep, 106-109, 130-32).  Dr. Schoenfeld explained to her that he did not want to write the letter because he did not feel it was appropriate considering their past sexual relationship.  Nevertheless, Plaintiff viewed his refusal as retaliation for declining his sexual advances and abruptly left her unauthorized internship.  (Doe Dep, 132).  So, as of 5/21/15 Plaintiff had two shadowing opportunities with Dr. Schoenfeld and abruptly left her alleged internship in August 2015.

As to the question of whether University officials knew or should have known of this arrangement, the answer is clearly "no."  First, Plaintiff was asked by Dr. Schoenfeld to lie about her relationship to him, and she did lie.  Second, the former Division Chief of Gastroenterology, Dr. Chung Owyang, testified that proper protocol for visitor shadowing was frequently discussed at the monthly faculty meeting and Dr. Schoenfeld should have known how to properly bring

someone aboard for that purpose - yet, he followed none of the protocols in an effort to secret his relationship to Plaintiff. (*See* Owyang Dep, 9, **Ex 10**). The first time Dr. Owyang ever had any contact with Plaintiff was in 2017 - well after she abruptly left her unauthorized internship in August 2015, and he had no record of how many times she was at Michigan Medicine. (Owyang Dep, 8, 15).

Next, Jeff Holden, the Division Administrator for Gastroenterology in 2015, testified that if a physician was seeking a shadowing opportunity for an outsider, all physician leads would have involved him in the process. He worked with Dr. Schoenfeld and at no time was a request ever brought to him to have Plaintiff shadow Dr. Schoenfeld. (*See* Holden Dep, 20-21, **Ex 12**). Mr. Holden confirmed that had Plaintiff been requested to shadow Dr. Schoenfeld she would have had to go through the authorization process, and she never did. In addition, he testified that he searched his records and found no communications related to Plaintiff "shadowing" in 2015 and verified the truth of Defendants' interrogatory answers. (Holden Dep, 22-23).

Michigan Medicine's Compliance Director, Rebecca Hulea, was also deposed. (*See* Hulea Dep, **Ex 11**). She testified that simply because Plaintiff was not stopped and questioned by a Michigan Medicine employee did not mean that Michigan Medicine consented to her unauthorized presence in patient care areas. (Hulea Dep, 18, 27). She also testified that while compliance is everyone's responsibility, Michigan Medicine does not have a specific policy mandating employees to stop and question those who do not have ID. (Hulea Dep, 18-19). Ms. Hulea also confirmed in her testimony that Plaintiff would have been required to comply with the shadowing policy attached as **Ex 6**. (Hulea, 31-32).

And finally, Theresa Nester, the Administrative Assistant to the Gastroenterology Division Chief, Dr. Owyang was deposed and testified that she provided comprehensive division support

on all types of matters, and a request for Plaintiff to shadow would have come to Dr. Owyang and she would have been aware of it.  (*See* Nester Dep, 15, Nester, **Ex 13**).  She did not recall any requests or communications in 2014-215 involving a shadowing opportunity for Plaintiff.  (Nester Dep, 15).  Ms. Nester also gave testimony as to the size and scope of the Gastroenterology Division back in 2014-15, testifying that it would have had about 85 clinical faculty members, another dozen research faculty, a very large cohort of nurses and medical staff, and about eight administrative assistants.  The Division had well over 100 people, none of whom Plaintiff (who likely would have met and remembered at least a few) has secured as a witness via deposition or affidavit to testify about her presence in the Division.  (Nester Dep, 20).

It is anticipated that Plaintiff will argue that her presence in patient care areas was not questioned and that she was permitted to be there—and thus, this is official recognition of her status as a mentee/intern.  However, this argument simply ignores common sense and facts.  She shadowed nobody other than Dr. Schoenfeld, was on-site less than 20 times, he told her to wear scrubs to blend in, and then to lie to anyone who asked about her relationship to him - which she did.  And adding to this, Plaintiff remained deliberately naïve of any obligations she had to properly consummate an official internship, simply choosing to believe that the person with whom she had a paid sexual relationship (and who had asked her to lie to people at Michigan Medicine), was administratively "taking care" of everything.  (Doe Dep, 45, 50-51). Plaintiff and Dr. Schoenfeld went to great lengths to avoid suspicion and questioning - and it apparently worked as nobody in Gastroenterology administrative leadership knew of, should have known of, or authorized Plaintiff's presence as a mentee/intern.  Furthermore, it bears repeating that on the question of standing this Court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists and has the power to weigh the evidence and determine

its effect on the Court's authority to hear the case.  Plaintiff's subjective belief that she was engaged in an authorized educational program or activity at UM strains reason and credibility. She was fully aware of the lies and cover-up, and participated in the ruse.

> **2.      What was Doe's participation in and observation of medical research and patient care; and whether the University knew or should have known of Doe's participation in and observation of medical research and patient care?**

There is no record evidence of Plaintiff observing medical research.  The only evidence of Plaintiff observing patient care is her testimony twice in her deposition that she "interacted" with patients. (Doe Dep, 43, 78).  Plaintiff's counsel asked her a series of questions on cross-examination about who she was "exposed" to at Michigan Medicine, and she never mentioned or discussed patients.  These two vague references to "patient interaction," without dates, records, or any substance as to the extent, duration and nature of these alleged interactions cannot carry the day in establishing a Title IX programmatic connection, even under the relaxed standard of *Snyder-Hill*.  And for the reasons discussed above, Gastroenterology administrative leadership did not know, and had no reason to be aware that this was occurring on an unauthorized basis.

> **3.      When and whether University officials authorized, implicitly or explicitly, her presence, observation, and/or participation; and participation in any other education programs or activities at the University through Schoenfeld's "mentorship"?**

The answer to this question is unequivocally "no."

Q:      Who gave you the internship, Doctor Schoenfeld or Michigan Medicine?
A:      John Doe, Dr. Schoenfeld.  (Doe Dep, 71).

Plaintiff was not a student at UM during the pertinent times in the Second Amended Complaint and engaged in no program or activity at UM.  In her Second Amended Complaint, Plaintiff claims that in the Winter and Summer of 2015, "John Doe" gave her "an internship at the

University of Michigan Taubman Center"[2] to help her "gain admission to the University of Michigan School of Medicine."  (Page ID.276).  She further admits that "John Doe" (Dr. Schoenfeld) gave her an internship without any background check, HIPAA screening, or ID and asked Plaintiff to lie to University staff and state she was a "family friend" (Page ID.277).  Plaintiff alleges that the "internship" ended when "John Doe" rejected her request for a recommendation letter.  (Page ID.278).

There is no record evidence, nor Complaint allegations, of Plaintiff participating in "any other education programs or activities at the University through Schoenfeld's 'mentorship.'" Moreover, Dr. Schoenfeld was not a "University official" and, considering their relationship, was most certainly acting outside the scope of any authority he did have by inviting Plaintiff to shadow him.  Unquestionably, this arrangement would have never been authorized had there been disclosure of his past sexual relationship with Plaintiff.

It is undisputed that Dr. Schoenfeld alone gave Plaintiff the unauthorized "internship" at Michigan Medicine.  (Doe Dep, 55-56).  Plaintiff was asked in her deposition whether there was anyone other than Dr. Schoenfeld who could confirm her status as an intern at Michigan Medicine. **Her response was "no."**  (Doe Dep, 48, 58-59.). She further testified: "John Doe told me to say if anyone asked who I am, I'm a family friend, and I did what he said to do because he was in control of me during the internship, a supervisory authority figure."  (Doe Dep, 62).  Plaintiff also acknowledged that this was untrue - she was not, in fact, a "family friend."  (Doe Dep, 66).  But, Plaintiff, had no problem with the fact that she was being asked to lie and hide the reasons for her presence.

---

[2] Allegations of sexual harassment during a paid postgraduate medical internship are not actionable under Title IX. *Crandell v. New York Coll. of Osteopathic Med.*, 87 F. Supp. 2d 304 (S.D.N.Y. 2000).

Finally, Dr. Schoenfeld's Declaration confirms, among other things, that 1) he did not seek approvals for Plaintiff to shadow him from the Chair or administrative leadership in the Department of Gastroenterology, nor did he inform UM Compliance or any other unit at UM of the arrangement, and 2) UM administration and leadership did not have knowledge or approve of the shadowing arrangement.   The individuals in the best position to know and impliedly or expressly authorize this "shadowing" (Owyang, Holden, Nester, Hulea) have testified that they had no knowledge of Plaintiff's presence at Michigan Medicine in 2015.  Plaintiff cannot offer a single witness who can confirm with admissible evidence her authorized presence as a mentee/intern at Michigan Medicine in 2015.

In *Snyder-Hill, supra*, the Sixth Circuit clearly left the door open to non-student standing in Title IX cases. In distinguishing *Arocho*, the Court stated:

> In *Arocho v. Ohio University*, No. 20-4239, 2022 WL 819734, at *3 (6th Cir. Mar. 18, 2022), we recognized that "a nonstudent like [the plaintiffs] may bring a Title IX claim, if [they] w[ere] excluded from or discriminated against under a[n] 'education program or activity.' " In *Arocho*, the plaintiff did not have a Title IX claim because "the full extent of Arocho's relationship with Ohio University was her participation in career day" and she did "not allege that she intended to partake in any Ohio University education program or activities in the future." *Id.* at *4. **The barrier to Arocho's suit was *not* that she was a nonstudent; it was instead that she could not point to any education program or activity of which she was denied the benefit.**

*Snyder-Hill* at 707. (Emphasis provided).

In spite of the expansion of Title IX standing by the *Snyder-Hill* court, the same barrier to standing that applied in *Arocho* exists in this case. Plaintiff cannot point to any education program or activity of which she was denied the benefit. The *Snyder-Hill* court adopted the reasoning of the First Circuit in *Doe v Brown*, 896 F.3d 127 (1st Cir. 2018) and held that a non-student and non-employee can bring a Title IX claim if they were subject to discrimination "while participating, or at least attempting to participate, in the funding recipient's education program or activity." *Snyder-*

13

*Hill* at 708, *citing Doe v. Brown*, 896 F.3d at 131.  It cannot be said, in this case, that plaintiff was participating in Defendants' program or activity, or that she even believed that she was attempting to, considering 1) her engagement in the lies and deception with Dr. Schoenfeld, 2) her failure to comply with policy and complete any application, training or background screening, and 3) the lack of any express or implied authorization from those in administrative leadership.  To allow standing in this case would potentially subject all Title IX covered institutions to a private right of action for the rogue, unauthorized and impermissible conduct of their staff and faculty.  This *ultra vires* activity alone differentiates this case from the plaintiffs in *Snyder-Hill*.

Neither the allegations in the Second Amended Complaint, nor the record established through limited discovery establish the type of programmatic relationship required by law to sustain a Title IX claim, and for this reason, Plaintiff lacks standing and this Court lacks subject-matter jurisdiction.

**C.    Even if Plaintiff Has Standing, Both Her Title IX Claim Against the University and §1983 Claims Against the Individual Defendants Are Time Barred**

At best, even if there was some informal, unauthorized mentoring relationship with "John Doe" (which Plaintiff calls an "internship"), it ended in the August 2015 - over 6 years prior to filing this lawsuit, making her current claims untimely.  FRCP 8(c) requires a party to assert certain affirmative defenses, including the statute of limitations, when responding to a pleading.  The purpose of the rule "is to give the opposing party notice of the affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993).  Dismissal under FRCP 12(b)(6) is appropriate where the allegations in the complaint affirmatively show that the claim is time-barred.  *GEICO Corp. v. Autoliv, Inc.,* 345 F.Supp.3d 799, 834 (E.D. Mich. 2018). For the purpose of §1983, Title IX, and equal protection claims, federal courts apply the state statute of limitations applicable to personal injury actions.  *Lillard v. Shelby County Board of*

14

*Ed.,* 76 F.3d 716, 729 (6th Cir. 1996).  In Michigan, the statute of limitations on personal injury

actions is three years. *Id.  See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020)

and *Dibbern v. Univ. of Michigan*, No. 12-15632, 2013 WL 6068808, at *7 (E.D. Mich. Nov. 18,

2013).

Under Title IX, a claim accrues at the time the wrong upon which the claim is based was

done regardless of the time when damage results.  *Forrester v. Clarenceville Sch. Dist.,* No. 20-

12727, 2021 WL 1812700, at *3 (E.D. Mich. May 6, 2021).  The Sixth Circuit has consistently

held that the limitations period for a §1983 claim begins to run when the plaintiff knows or has

reason to know that the act providing the basis of his or her injury has occurred.  *Evans et al, v.*

*City of Ann Arbor, et al., Defendants. Additional Party Names: Prop. Mgmt. Specialists, Inc.,* No.

21-10575, 2022 WL 586753, at *8 (E.D. Mich. Feb. 25, 2022) *citing Garza* at 867.

Here, Plaintiff's Second Amended Complaint affirmatively shows the untimeliness of her

claims.  Plaintiff alleges that:

- she met Dr. Schoenfeld in 2013 and maintained a sexual relationship with him between February and May, 2013  (PageID.273);

- that Dr. Schoenfeld raped her in March, 2013  (PageID.274);

- that despite her claimed "rape," which she has since retracted, she maintained communication with Dr. Schoenfeld between 2013-2016 regarding "mentoring goals" (PageID.275);

- that Dr. Schoenfeld gave her an "internship" without any background check, HIPAA screening, or ID about which Dr. Schoenfeld asked Plaintiff to lie to University staff and state she was a "family friend" (PageID.277);

- that she exited her "internship" because Dr. Schoenfeld refused to give her a recommendation letter (PageID.278);

- that in February, 2018, she met with Defendants Baum and Seney from UM's "Title IX Office" to report Dr. Schoenfeld's "sexual abuse" and "predatory behavior," (which has since been retracted) and was informed that there would not be a formal investigation because she was not a student at UM (PageID.280); and

15

- that in April, 2018, she received an email from David Baum stating that Dr. Schoenfeld's adjunct professorship was discontinued and that he was no longer employed by UM (PageID.280).

Plaintiff filed her initial Complaint on October 22, 2021. The last alleged incident of harassment or discrimination by Dr. Schoenfeld was August 2017, when she alleges in her Second Amended Complaint that she was stalked off-campus at a Walgreens (PageID.279).  Furthermore, she was informed by Defendants Baum and Seney that no formal investigation would occur because she was not a student, and that Dr. Schoenfeld departed from the University in April, 2018.  Plaintiff alleges no post-actual knowledge harassment and her Second Amended Complaint fails to allege **any** facts supporting a Title IX deliberate indifference claim within the 3-year statutory period dating back from her October 22, 2021 filing.  For these reasons, Plaintiff's claims against all Defendants should be dismissed.

**D.     Even if Plaintiff Had Standing and Even if Her Claim Was Not Time Barred, Her Second Amended Complaint Fails to State a Claim of Deliberate Indifference Under Title IX Because She Has Failed to Allege Post-Actual Knowledge Harassment**

The United States Supreme Court has implied a private right of action under Title IX against educational programs receiving federal funds. However, under Title IX, educational institutions cannot be held liable under a theory of *respondent superior*.  To be liable, the plaintiff must show that the school was deliberately indifferent to known acts of discrimination. *Doe v. Centreville Pub. Sch.,* No. 1:17-CV-317, 2019 WL 10890258, at *5 (W.D. Mich. Apr. 29, 2019).  In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 277 (1998), the Court held that a deliberately indifferent institution can only be held liable under Title IX for the sexual harassment of a student under limited circumstances.

Institutional Title IX liability only occurs when a plaintiff shows that (1) the school had actual notice of the sexual harassment and (2) exhibited deliberate indifference in light of such

notice. *McCoy v. Bd. of Educ., Columbus City Schs.*, 515 F. App'x 387, 391 (6th Cir. 2013) (*citing Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005)); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 260-61 (6th Cir. 2000). In *Gebser*, the Court concluded that a school district could only be held liable with actual notice of the harassment. *Gebser*, 524 U.S. at 287-88. To have actual notice, an "appropriate person" must have knowledge, meaning "an official of the recipient entity with authority to take corrective action to end the discrimination." *Id.* at 290. In addition, the official must fail to adequately respond such that "the response must amount to deliberate indifference to discrimination." *Id.* In these situations, school districts can "be held liable in damages only where their own deliberate indifference effectively 'cause[d]' the discrimination." *Davis*, *supra* at 643 (*quoting Gebser*, 524 U.S. at 291).

In *Doe v. Univ. of Kentucky*, 959 F.3d 246 (6th Cir. 2020), the plaintiff's deliberate indifference claim failed as a matter of law because her allegations of rape in the pre-actual-knowledge period failed to show actionable sexual harassment. The relevant inquiry, according to the *Doe* court, was "whether UK's *response* to Jane Doe's accusations subjected her to *further* actionable sexual harassment." *Id*. at 251. There, like here, plaintiff did not plead any incident of actionable harassment in the post-actual-knowledge period. The *Doe* court further held that even if post-actual-knowledge interactions could amount to actionable harassment, plaintiff failed to show that UK's response was clearly unreasonable and that it caused the further harassment. Nor did UK's non-compliance with its own administrative policies amount to deliberate indifference. *Cf. Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292, 118 S. Ct. 1989, 141 L.Ed.2d 277 (1998) (holding that "the failure to *promulgate* a grievance procedure does not itself constitute 'discrimination' under Title IX") (emphasis added). *Id.* at 252.

Again, Plaintiff was informed that no formal investigation would occur because she was not a student, and that Dr. Schoenfeld departed from the University in April 2018. Plaintiff's Second Amended Complaint alleges no post-actual knowledge of harassment and fails to allege **any** facts supporting a Title IX deliberate indifference claim.

**E.     There Is No Individual Liability Under Title IX. Plaintiff's §1983 Claims Against the Individual Defendants Cannot Be Based Upon a Violation of Title IX and Therefore Must Be Dismissed for Failure to State a Claim**

Plaintiff attempts to assert §1983 claims against individual Defendants based on an alleged violation of Title IX, and nothing else. (PageID.291, para 81). In *Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016), the court explicitly addressed and rejected the plaintiff's attempt to base a §1983 claim on allegations of Title IX violations-- differentiating *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 129 S. Ct. 788, 172 L.Ed.2d 582 (2009).

In *Fitzgerald*, the U.S. Supreme Court held that Title IX did not preclude use of §1983 to redress unconstitutional gender discrimination in schools. *Id.* at 258, 129 S. Ct. 788. However, the issue that the Supreme Court resolved in *Fitzgerald* was different than the argument plaintiff made in *Wilkerson* and that Plaintiff makes here. First, *Fitzgerald* confirmed that Title IX does not allow suit against individuals. *Fitzgerald*, 555 U.S. at 257, 129 S. Ct. 788. Next, the Supreme Court's holding did not deal with the specific issue of whether a plaintiff could *base his* §1983 claim on a violation of Title IX. Rather, the Supreme Court analyzed whether Congress's enactment of Title IX inferred that §1983 claims ***based on violations of the Equal Protection Clause*** were precluded by Title IX.[3]

---

[3] Furthermore, a third amendment to Plaintiff's Complaint for the purpose of alleging a constitutional violation would be futile because the claim would otherwise be time-barred.

In determining whether such intent could be inferred, the Supreme Court compared the rights and protections of each statute to those existing under the Constitution. In previous cases where the Supreme Court found §1983 to be precluded, the Supreme Court recognized that those statutes were so comprehensive and detailed that there was little left for §1983 to protect. *Id.* at 253–54, 129 S. Ct. 788.  In those cases, the Supreme Court found that §1983 was precluded because it would otherwise allow a plaintiff to "circumvent the statutes' provisions in [a] way [that] would have been 'inconsistent with Congress's carefully tailored scheme.'" *Id.* at 255, 129 S. Ct. 788.  Finally, while the Supreme Court recognized the varying schemes available under Title IX and §1983, it ultimately held that "parallel or concurrent §1983 claims" would not allow access to new remedies.  *Id.* at 256, 129 S. Ct. 788.

Based on the Supreme Court's analysis in *Fitzgerald*, the *Wilkerson* court held that the plaintiff could not state a claim under §1983 ***based on an underlying violation of Title IX***.  *See also Cox v. Sugg*, 484 F.3d 1062, 1067 (8th Cir. 2007); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007); *Seamons v. Snow*, 84 F.3d 1226, 1234 n.8 (10th Cir. 1996). The *Wilkerson* court explained:

> Plaintiff seeks to avoid this restriction by nesting a Title IX claim into a §1983 claim and claiming that Title IX is the substantive right violated. This is in conflict with *Fitzgerald* by giving Plaintiff rights that would be unavailable under Title IX. *See id.* at 256, 129 S. Ct. 788. Therefore, the Court finds that Plaintiff cannot state a claim for relief under § 1983 based on an underlying violation of Title IX.

*Id* at 608.

In the present case, Plaintiff has also attempted to nest her Title IX claim in a §1983 claim. Plaintiff's Second Cause of Action is based entirely on allegations that the individual defendants violated Title IX.  In fact, Plaintiff used the "deliberate indifference" language that is the standard for Title IX claims against an institution to support her §1983 claim.  (PageID.292-93).  As this

claim is clearly impermissible as a matter of law, it must be dismissed for failure to state a claim on which relief may be granted.

**F.      Even if Plaintiff Could Use Alleged Title IX Violations as the Basis for her §1983 Claims Against the Individual Defendants, _and_ Even if Those Claims Were Not Time Barred, Individual Defendants Are Entitled to Qualified Immunity**

Here, several Defendants have been sued in their individual capacity under § 1983 and they are all protected by the doctrine of qualified immunity. Qualified immunity insulates officials from suit under §1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986). Qualified immunity can be raised at the Rule 12(b)(6) stage where Plaintiff fails to articulate any "clearly established law"— beyond "a high level of generality"—that any of the individual defendants violated.  *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015).

Because no reasonable jury could find that any individual defendant violated Plaintiff's constitutional rights (no constitutional violations have even been asserted in the Second Amended Complaint), and because alleged violations of Title IX cannot form the basis of a §1983 claim, this Court should not even have to reach the question of whether such rights were clearly established at the time of the alleged violation.  *See Lipian v. Univ. of Michigan,* 453 F. Supp. 3d 937, 956 (E.D. Mich. 2020), *motion to certify appeal denied,* No. 18-13321, 2020 WL 3402013 (E.D. Mich. June 19, 2020).  Thus, Plaintiff has failed to state a claim for relief and her claims against all individual Defendants should be dismissed.

**G.    As Plaintiff's Federal Claims Fail, this Court Should Not Retain Jurisdiction Over Plaintiff's State Law Claims, Which Are Otherwise Barred by State Law Immunity and Failure to Provide Notice Pursuant to the Michigan Court of Claims Act.**

Plaintiff's remaining claims sound only in state law. Federal courts can only exercise supplemental jurisdiction over state law claims because of 28 U.S.C. §1367.  That statute provides that a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction" §1367(c)(3).  The Sixth Circuit has applied "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."  *Packard v. Farmers Insurance Co. of Columbus*, 423 Fed. Appx. 580, 584 (6th Cir. 2011).  A court should only retain supplemental jurisdiction in such cases "where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the court's] concern over needlessly deciding state law issues."  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

The factors courts usually look to in order to retain jurisdiction are not applicable here. The case has not been on the district court docket long; only limited discovery has began; there is no "voluminous record" at the district court; there is no intention of forum shopping; and dismissal would not waste judicial resources.  *See Harper v. Auto Alliance International, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).   Accordingly, this Court should, in its discretion, refuse to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

**RELIEF REQUESTED**

For the reasons argued above, Defendants respectfully request that this Court dismiss Plaintiff's Second Amended Complaint in its entirety, with an award of costs and fees to Defendants pursuant to FRCP 12.

Respectfully submitted,

THE UNIVERSITY OF MICHIGAN
OFFICE OF THE VICE PRESIDENT
& GENERAL COUNSEL

By:      /s/ *Thomas L. Kent*
         Thomas L. Kent (P55863)
         1109 Geddes Avenue
         Ruthven Building, Suite 2300
         Ann Arbor, MI 48109-1079
         (734) 764-0304
         tomkent@umich.edu
Dated:  November 14, 2023        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

STATE OF MICHIGAN            )
                             ) ss
COUNTY OF WASHTENAW          )

I hereby certify that on November 14, 2023, I electronically filed *Defendants Brief in Support of Motion to Dismiss Pursuant to FRCP 12* with the Clerk of the Court using the ECF System.

By:      /s/ *Jennifer L. Traver*
         Jennifer L. Traver
         Legal Assistant