## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JANE DOE,                                   Case No. 3:2021-cv-12492

        Plaintiff,                          Hon. Shalina D. Kumar

v.                                          Mag. Judge Elizabeth A. Stafford

UNIVERSITY OF MICHIGAN,
et al.

        Defendants.

---

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS'<br>MOTION TO DISMISS [ECF NO. 43]</u>

Keith Altman (P81702)                       Thomas L. Kent (P55863)
THE LAW OFFICE OF KEITH ALTMAN              THE UNIVERSITY OF MICHIGAN
33228 West 12 Mile Road - Suite 375         OFFICE OF THE VICE PRESIDENT &
Farmington Hills, MI 48334                  GENERAL COUNSEL
(516) 456-5885                              1109 Geddes Avenue
keithaltman@kaltmanlaw.com                  Ruthven Building, Suite 2300
*Attorney for Plaintiff*                    Ann Arbor, MI 48109-1079
                                            (734) 764-0304
                                            tomkent@umich.edu
                                            *Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................ i

TABLE OF AUTHORITIES .............................................................. ii

OVERVIEW ......................................................................................1

ARGUMENT .....................................................................................2

   A.  Standard for Dismissal ...........................................................2

   B.  Plaintiff Has Standing to Bring a Title IX Claim as Non-Student ..................4

   C.  The Title IX Claim is Not Time Barred ........................................12

   D.  Well Pled Deliberate Indifference Claim Under Title IX .............................15

   E.  §1983 Individual Liability Under A Title IX Theory ...................................19

   F.  Defendant's Are Not Entitled to Qualified Immunity....................................22

   G.  Jurisdiction Over State Law Claims ............................................23

EVIDENCE PROVIDED BY DEFENDANTS ....................................24

CONCLUSION ...............................................................................25

CERTIFICATE OF SERVICE .........................................................26

# TABLE OF AUTHORITIES

**Cases**

*Arocho v. Ohio Univ.*, No. 20-4239, 2022 U.S. App. LEXIS 7414 (6th Cir. Mar.

    18, 2022 ............................................................................................. 6, 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................. 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) ...................................... 3

*Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020) ....... 3

*Cannon v. Univ. of Chi.,* 441 U.S. 677, 99 S. Ct. 1946 (1979) ............................... 21

*Davis v. Monroe County Bd. Of Educ.,* 526 U.S. 629 (1999) .................................. 16

*Doe v. Dallas Inden. Sch Dist.*, 220 F.3d at 384 (5th Cir. 2000) ............................ 15

Doe v. Univ. of Mich., 448 F. Supp. 3d 715, 728 (E.D. Mich. 2020) ..................... 23

*Doe v. University of Cincinnati*, 872 F.3d 393 (2017) ............................................ 23

*Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008) ..................................... 3

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256, 129 S. Ct. 788, 796

    (2009) .................................................................................................. 21

*Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60, 112 S. Ct. 1028 (1992) ..... 21, 22

*Kesterson v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020) ......................... 17

*Kollaritsch v. Michigan State Univ. Bd. of Tr.*, 944 F.3d 613, 624-25 (6th Cir.

    2019) .............................................................................................. 17, 18

*Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996) ........................... 2

*Mennone v. Gordon*, 889 F. Supp. 53 (D. Conn. 1995).....................................19, 20

*Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003)..............................2

*Norris v. Norwalk Pub. Sch.*, 124 F. Supp. 2d 791, 792 (D. Conn. 2000) .............19

*Novak v. City of Parma, 932 F.3d 421, 426-27* (6th Cir. 2019) ...............................3

*Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990) ..........2

*Ohio State Univ. v. Snyder-Hill*, 143 S. Ct. 2659 (2023) .........................................6

*Packard v. Farmers Insurance Co. of Columbus, 423 Fed. Appx. 580, 584 (6th Cir.
        2011)* ................................................................................................................24

*Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir.1992) ....................................22

*Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir.2005) ..............................................22

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ........
        .......................................................................................................... 22, 23

*Silberstein v. City of Dayton*, 440 F.3d 306 (2006). ...............................................22

*Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022) ........................ 6, 7, 9

*United States ex rel. Conner v. Salina Regional Health Center*, 543 F.3d 1211
        (10th Cir. 2008).................................................................................................3

*United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994).......................................2

*Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (U.S. 6th Cir. 2022)........................18

*White v. United States*, 601 F.3d 545 (6th Cir. 2010)................................................3

*Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012)

.................................................................................. 12, 13, 14

**Statutes**

20 U.S.C. § 1681 ........................................................................ 4, 19, 20

28 U.S.C. §1367 ................................................................................23

28 U.S.C. §1367(c)(3) .......................................................................23

34 CFR 106.44 .......................................................................... 4, 15

**Rules**

Fed. R. Civ. P. 12(b)(1) .....................................................................2

Fed. R. Civ. P. 12(b)(6) .....................................................................2

**NOW COMES** Plaintiff JANE DOE, by and through her attorney, with Plaintiff's Response to Defendant's Motion to Dismiss [ECF 43] and hereby state the following:

## OVERVIEW

On March 23, 2023, this honorable Court issued an order denying Defendants Motion to Dismiss without prejudice. The Order further sent the parties into limited discovery on the extent of Plaintiff's internship at the University of Michigan to assist the Court in determination of proper jurisdiction.

As a housekeeping matter, the limited discovery did not go off without a hitch. Defendants failed to produce a proper 30(b)(6) witness. The witnesses that was produced failed to properly review University records to provide answers to the topics provided on the 30(b)(6) deposition notice. Jeff Holden and Theresa Nester failed to review University policies, procedures, internal documentation, etc. to prepare for the noticed depositions rendering them unable to testify to the sought after information within the allowed scope of limited discovery. (**Defendants Exhibit 12, p. 10:9-10:24, 17:20-2-:03; Defendants Exhibit 13, p. 6:18-7:2, 9:21-10:19**). As such, Plaintiff was unable to determine the *full* scope of Plaintiff's internship. However, the limited responses that Defendants begrudgingly provided are damning.

# ARGUMENT

## A. Standard for Dismissal

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison–Hughes v. Shalala,* 80 F.3d 1121, 1130 (6th Cir. 1996); Fed. R. Civ. P. 12(b)(1). A district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction." *Id.* Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In matters regarding subject matter jurisdiction, the court may look to evidence outside the pleadings. *Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003).

Under Fed. R. Civ. P. 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state

a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). At the motion-to-dismiss stage, "we 'must accept as true all material [factual] allegations of the complaint'" and "must construe the complaint liberally in favor of the complaining party." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008)).

At the current stage, it simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 753 (6th Cir. 2020). If resolving the dispute involves a question of fact upon which evidence is required, dismissal on the pleadings is not appropriate. See *Novak v. City of Parma, 932 F.3d 421, 426-27* (6th Cir. 2019).

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but must simply allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B. Plaintiff Has Standing to Bring a Title IX Claim as Non-Student

Title IX of the Education Act Amendments of 1972 ("Title IX") prohibits discrimination based on sex in educational institutions receiving federal funding. *20 U.S.C.* § 1681. Schools receiving federal funding are required to employ at least one Title IX coordinator, and a staff member responsible for Title IX compliance. The University of Michigan employs a Title IX coordinator in compliance with Title IX requirements. Moreover, 34 CFR 106.44 provides that such institutions must respond affirmatively when they receive "actual knowledge" that a student may have been discriminated against based on gender. This creates a duty for institutions to have their Title IX coordinator promptly investigate allegations of sex-based discrimination. This is where things start to fall apart.

At all relevant times Plaintiff was a prospective student of the University of Michigan. In 2013, Plaintiff sought out a mentorship with John Doe. Plaintiff's connection with the University of Michigan are extensive. The case law that Defendant's propose lack similar facts to the current claim. The case law presented by the Defendants show lack of standing for individuals who had cursory contact with a university. The facts of Plaintiff's case differ significantly in depth and duration.

Plaintiff was a patient at the University of Michigan Health System. Plaintiff sought out a mentorship relationship with John Doe as she intended to, and

eventually would, be accepted to the University of Michigan as a graduate student. Plaintiff entered into an internship with John Doe. Unbeknownst to her at the time, the internship was unauthorized. She participated in the internship at the University of Michigan Health System, interacting with other Health System employees, interns and patients.

At no time do Defendants deny that Plaintiff was present within the University of Michigan Health System. They instead argue that the University of Michigan had no knowledge of Plaintiff's internship or her presence within UM Medical Center. That argument falls flat. Defendant provides in their motion to dismiss that Plaintiff was present at her "unknown" internship less than 20 times, providing that does not amount to systematic and surmountable interactions with the University. Plaintiff's internship is not miniscule and outside of the scope of Title IX liability.

Plaintiff was present at the University of Michigan Medical Center with the intent of obtaining educational knowledge from John Doe through an internship. **(Defendants Exhibit 10, p. 14:6-14:13).** John Doe admits that Plaintiff was present in the clinical setting at UM. **(Defendants Exhibit 2).** Dr. Owyang admits that Plaintiff was present in the clinical setting at UM. **(Defendants Exhibit 10, p. 8:14-8:22, 14:6-14:13)**. The extent of how many patients Plaintiff was able to observe rotation on, view medical procedures for or follow up on are undetermined as

Defendants were unwilling to search patient records to determine the frequency and/or duration of Plaintiff's participation in patient care.

It is not debated that at the time of the events leading to Plaintiff's claim, Plaintiff was not a student at the University of Michigan. Plaintiff was a prospective student seeking educational advancement with the intention of one day pursuing an advanced degree from UM. Plaintiff is currently a graduate student at UM.

This court should rely on the Sixth Circuit's reasoning in *Snyder-Hill* rather than *Arocho*, as the Court reasoned in its March 23, 2023 Order. *Snyder-Hill* properly and adequately expands the scope of Title IX by allowing nonstudents to have standing to bring Title IX claims if the nonstudents participated in an "education program or activity. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686 (6th Cir. 2022). Plaintiff was participating in an education program or activity at the University of Michigan, and therefore Plaintiff meets the requirements for standing under both *Arocho[1]* and *Snyder-Hill*.[2]

The Sixth Circuit's reasoning in *Snyder-Hill* is sound. The Sixth Circuit had to examine under what circumstances a nonstudent participates in an "education program or activity" at an institution of higher learning. The University of Michigan holds its staff, resources, and facilities out to the public, and the Plaintiff in this case

---

[1] *Arocho v. Ohio Univ.*, No. 20-4239, 2022 U.S. App. LEXIS 7414 (6th Cir. Mar. 18, 2022)
[2] The United States Supreme Court has denied certiorari in *Snyder-Hill*. *Ohio State Univ. v. Snyder-Hill*, 143 S. Ct. 2659 (2023).

participated in all three by engaging in an internship at the Taubman Center in 2015. It is noteworthy that Plaintiff participated in the internship with the University of Michigan with the intentions of enrolling in a post graduate program at the University, of which she applied, was accepted and is currently attending. *Snyder-Hill* does not create a limitless class of plaintiffs that can bring Title IX claims against any institution receiving federal financial assistance. Rather, *Snyder-Hill* explores the boundary formed by the Sixth Circuit for granting standing to nonstudents bringing Title IX actions against federally funded educational institutions. Plaintiff qualifies as a nonstudent who has standing to bring a Title IX claim against the University of Michigan.

Plaintiff's relationship with Dr. Schoenfeld was a mentor-student relationship. **(Defendants Exhibit 10, p. 14:6-14:13).** As an undergraduate student, Plaintiff was manipulated by Dr. Schoenfeld because she was naïve, impressionable, and eager to gain access to staff, resources, and facilities at the University of Michigan. As a board-certified gastroenterologist at the University of Michigan, Dr. Schoenfeld offered Plaintiff career advice and promises of professional assistance regarding Plaintiff's potential career in medicine.

Dr. Schoenfeld discussed Plaintiff's career goals with the Plaintiff and consulted with the Plaintiff regarding course schedules and preparation for the Medical College Admission Test. As a gastroenterologist at the University of

Michigan, Dr. Schoenfeld provided Plaintiff with access to funds, staff, resources, and facilities at the University of Michigan. Plaintiff's contacts with Dr. Schoenfeld and the University of Michigan establish Plaintiff as an individual who participated in an "education program or activity" at the University of Michigan.

Plaintiff met with Dr. Schoenfeld at the University of Michigan hospital cafeteria, and Dr. Schoenfeld brought Plaintiff into the Gastroenterology conference room for Doctors for mentorship. By communicating with Plaintiff through his official University of Michigan email address, Dr. Schoenfeld used the University of Michigan's resources to continue his mentorship relationship with Plaintiff. Also, Dr. Schoenfeld provided Plaintiff with an internship at the University of Michigan Medical Center in 2015. It is not debated that Plaintiff was on the clinical floor on multiple occasions**. (Defendants Exhibit 10, p. 8:14-8:22, p. 14:6 – 14:13).** Plaintiff wore blue nursing scrubs during the internship, and Dr. Schoenfeld informed Plaintiff that he gained permission from the University of Michigan before Plaintiff's internship began. In this role, Plaintiff observed procedures such as colonoscopies and endoscopies.

Dr. Schoenfeld's systematic and premeditated abuse of Plaintiff implicated the staff, resources, and facilities at the University of Michigan as Dr. Schoenfeld used his profession, his title, and his experience to manipulate and harm Plaintiff over a period of several years. This court should examine the relationship between

8

Plaintiff and Dr. Schoenfeld in its totality. Upon doing so, the court should rule that Plaintiff does have standing to assert a Title IX claim against the University of Michigan because she was in constant contact with the staff, resources, and facilities at the University of Michigan. Plaintiff was harmed as a result of Dr. Schoenfeld's actions within his employment at the University of Michigan. Also, the University of Michigan should have been aware of Dr. Schoenfeld's abuse of Plaintiff through systematic and thorough monitoring.

"'Education program or activity' is defined broadly and extends to situations in which individuals are, for example, accessing university libraries or other resources, or attending campus tours, sporting events, or other activities." *Snyder-Hill v. Ohio State University*, 48 F.4th 686 (6th Cir. 2022). Plaintiff was an active participant in an internship at the UM Medical Center in 2015. The examples cited in *Snyder-Hill* are commensurate with Plaintiff's participation in an internship at the Taubman Center. During the internship, Plaintiff received benefits during the internship by participating in activities and services provided by the University of Michigan. Plaintiff met Dr. Schoenfeld at the University of Michigan hospital cafeteria and participated in an internship during which she wore nursing scrubs and observed physicians and other University of Michigan staff and medical students performing colonoscopies and other medical procedures in a learning capacity.

The record demonstrates that Plaintiff actively participated in the internship at the UM Medical Center, and therefore she satisfies the standing requirements set forth in *Arocho* as she was engaged in an official University program that had educational benefits. Plaintiff's internship cannot be compared to the career day example examined by the Sixth Circuit. In the present action, Plaintiff received educational benefits from her internship at the UM Medical Center in 2015. The relationship between Plaintiff and the University of Michigan was ongoing and reciprocal. Dr. Schoenfeld acted under the authority of the University of Michigan during his relationship with Plaintiff, and the court should find that Plaintiff meets the standing requirements to bring a Title IX claim against the University of Michigan.

Plaintiff's internship was not fraudulent, and Plaintiff understood her internship to be valid, official, and sanctioned by the University of Michigan. Dr. Schoenfeld's abusive and deceptive behavior does not shield the University of Michigan from liability.

Defendants continue to rely on Plaintiff's failure to go through what they deem the proper channels to secure an internship, providing that because she did not secure a badge and paperwork. They state that she should have known that the internship was not approved by UM and thus Title IX does not apply. Plaintiff sought out the internship opportunity from John Doe. John Doe in turn provided Plaintiff

10

with the internship opportunity. At no time did John Doe advise Plaintiff of the need to fill out paperwork and obtain a UM badge. John Doe knew of the requirements needed to authenticate Plaintiff's internship. **(Defendants Exhibit 10, p. 9:12-9:22; Defendants Exhibit 13, p. 11:16-12:13)**. As a non-student, Plaintiff would have had no way of knowing the requirements, or even the existence of the requirements to authenticate the internship. **(Defendants Exhibit 10, p. 9:23-10:5).** Everyone in the University of Michigan Medical Center is to have a badge on, whether they are an employee, student or visitor. It is not debated that Plaintiff was not issued a badge. Plaintiff did not have a badge that stated that she was part of an internship, nor did she have a badge that stated that she was merely a visitor not affiliated with Defendant. While there are policies and procedures in place to protect patient safety, which includes wearing of appropriate badges, no one stopped Plaintiff throughout the duration of her internship to ask to see her badge nor to advise her that she needed to obtain one. While there are no policies and procedures as to who must stop an individual in the UM Medical Center without a badge, there most certainly is a duty on behalf of UM employees to look into those without a badge for the safety of the UM campus and the patients of the UM Medical Center. **(Defendants Exhibit 11, p. 16:10-17:6).** Further, if Plaintiff didn't have a badge on and was not asked to leave then someone approved her presence there, though there may be exceptions. **(Defendants Exhibit 10, p. 12:25-13:11).** No exceptions were provided, nor

11

knowledge of any exceptions. Even if there was a exception made for Plaintiff, in regards to the ID badge, it does not negate her in depth involvement in the internship under John Doe and thus the Title IX requirements.

Defendants lack the ability to follow their own policies and procedures, which their employees and agents are aware of and trained on all policies and procedures do not absolve them of liability. As the facts of the case provide, Plaintiff is entitled to Title IX protection as a result of her extensive relationship with the University of Michigan.

## C. The Title IX Claim is Not Time Barred

Plaintiff's claims are not time barred under the equitable tolling doctrine. Defendants' deception and misrepresentation resulted in the delay of Plaintiff bringing the current claim as Plaintiff was unaware that Defendant failed to act.

The equitable tolling doctrine is available in limited circumstances. Equitable tolling doctrines may also apply if a plaintiff did not assert timely claims under Title IX due to fraud, misrepresentation, or deception by the defendant. For example, in *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012), the school actively concealed reports of sexual assault by a football coach. The school did not disclose any of the allegations against the coach and instead publicly represented that the accused coach "remained in good standing at the school and was held in high regard." The federal court found that the school's "deceitful conduct"

may have led the plaintiff's to "falsely believe that [the school] was unaware of [the accused coach's] misconduct and could not be liable[.]" *Id.*

Following the abuse of Plaintiff by John Doe, Plaintiff contact University of Michigan's Title IX office in early 2018. In February 2018. A Title IX intake was completed. In February 2018, Defendant Baum and Defendant Seney stated that they would not be able to conduct a formal investigation, but due to the nature of the allegations, they would conduct an informal investigation toward disciplinary action. Plaintiff relied on the statements of Baum and Seney. In April 2018 Plaintiff was notified by Baum that John Doe's adjunct professor position had been "discontinued" and that John Doe "was informed that I raised concerns about his behavior". Conversations between Baum and Plaintiff continued until June 2018. Defendant Baum suggested to Plaintiff that she speak to Dr. Owyang about the termination and her overall safety in the hospital.

In September 2019, Plaintiff saw through a public social media post that John Doe was interviewing at Stanford School of Medicine for both a doctor and professorship position. Plaintiff sent Stanford Title IX Office and School of Medicine Staff, information regarding John Doe's termination, as well as further evidence about the sexual assault she had experienced. Through pre-suit negotiations, documentation was revealed that there was no record of disciplinary action at UM. Furthermore, it was revealed that John Doe was never informed of

Jane Doe's report to the Title IX office. Rather, John Doe chose not to renew his position at the University of Michigan when Dr. Owyang called him.

Therefore, the University of Michigan had failed to conduct an informal investigation of the matter – despite the serious allegations of sexual assault and intimate person violence.

It was not until contacting Stanford's Title IX Office in September 2019 and subsequently receiving a cease-and-desist letter in April of 2020 that Plaintiff had knowledge that the University of Michigan had failed to investigate following her intake in the Title IX Office at the University of Michigan.

Plaintiff's discovery that there was no record of disciplinary action at University of Michigan after contacting Stanford's Title IX Office and being informed via a cease-and-desist letter in April of 2020, is relevant for purposes of determining the accrual date of the statute of limitations as the doctrine of equitable tolling applies. As shown above, Defendant's meet the deceitful conduct prong under *Zimmerman*, for the following reasons:

Defendant Baum stated that John Doe had been terminated and was the subject of disciplinary action by the University of Michigan. Both of these assertions were proven to be false. Baum further continued the lie by saying that he personally fired John Doe. Plaintiff did not obtain actual knowledge of Defendants failure to investigate until April 2020. Therefore, because Defendants have failed to take

14

corrective action and have demonstrated sufficient evidence to qualify under an Equitable Toll Doctrine, Plaintiff's claims are not time-barred and therefore Defendants' motion to dismiss in that regard should be dismissed.

### D. Well Pled Deliberate Indifference Claim Under Title IX

When a school has actual knowledge of sexual harassment in any of its programs or activities that take place in the United States, it must "respond promptly in a manner that is not deliberately indifferent." The Title IX Coordinator must promptly contact the complainant to discuss the availability of supportive measures, regardless of whether a formal complaint is filed, and to explain the process for filing a formal complaint. In addition, if a formal complaint is filed, either by the complainant or the Title IX Coordinator, a school must: offer supportive measures to the respondent and follow the Title IX grievance process. 34 C.F.R. § 106.44(a).

Officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the harm ultimately was not averted. Determining what constitutes appropriate remedial action for allegations of discrimination in Title IX of the Education Amendments of 1972 cases will necessarily depend on the particular facts of the case. *Doe v. Dallas Inden. Sch Dist.*, 220 F.3d at 384 (5th Cir. 2000).

A school district is guilty of deliberate indifference only when its response is "clearly unreasonable in light of the known circumstances." *Davis v. Monroe County*

*Bd. Of Educ.,* 526 U.S. 629 (1999). The facts are clear that the University of Michigan was deliberately indifferent, if not worse, when it came to handling Plaintiff's claims of abuse. The claims were swept under the rug and dealt with dishonestly from within.

Here, as outlined earlier in this Response, Plaintiff contacted the University of Michigan Title IX Office in 2018. In February 2018, she met with David Baum and Elizabeth Seney who did her intake. They stated they would be unable to conduct a formal investigation as Plaintiff was not a student of the University of Michigan, but due to the nature of the allegations, they would conduct an informal investigation toward disciplinary action.

Nothing happened until April 2018, when Plaintiff received an email from David Baum stating that John Doe's adjunct professorship "was discontinued" and that he "was informed that I raised concerns about his behavior." Emails with David Baum continued until June 2018, which further stated that John Doe had been terminated and was the subject of disciplinary action by the University of Michigan based on her reports. David Baum suggested that Plaintiff speak to Dr. Owyang about the termination and her overall safety in the hospital.

Defendants acted with deliberate indifference by not conducting proper investigations. In conclusion, an institution is deliberately indifferent to harassment if it reacts in a way that is "Clearly unreasonable in light of what it knew" *Kesterson*

16

*v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020). The Amended Complaint provides sufficient allegations that Defendants acted with deliberate indifference. Defendants acted unreasonably in light of the known circumstances.

To survive a motion to dismiss, a student-victim plaintiff must plead, "an incident of actionable sexual harassment, the school's actual knowledge of it, some further incident of actionable sexual harassment, that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the Title IX injury is attributable to the post-actual-knowledge further harassment." *Kollaritsch v. Michigan State Univ. Bd. of Tr.*, 944 F.3d 613, 624-25 (6th Cir. 2019).

Additionally, to establish causation under a Title XI deliberate indifference claim, a plaintiff must prove that he was subjected to further post-actual-knowledge harassment which would not have occurred but for a University's deliberate indifference. *Kollaritsch v. Mich. State. Univ. Bd. of Trs.*, 944 F.3d 613, 623-24 (6th Cir. 2019). The University of Michigan had failed to conduct an informal investigation of the matter – despite the serious allegations of sexual assault and intimate person violence – and allowed John Doe to have continued access to the University of Michigan's email servers, business contacts, and more students, until the end of his renewal on August 31, 2018.

The Court found in *Wamer*, that refraining from applying the more stringent standard in *Kollaritsch* does not change the fact that a Plaintiff must still allege that: (1) they were sexually harassed by a teacher or professor, (2) an official with authority to take corrective action had actual notice of the harassment, (3) the school's response was clearly unreasonable, and (4) the school's deliberate indifference caused her to suffer discrimination. *Wamer v. Univ. of Toledo*, 27 F.4th 461, 471 (U.S. 6th Cir. 2022) A less stringent standard is applied with facing a student-teacher incident of harassment than when the harassment is between two peers. The Court should use the standard set forth in *Wamer*, as the harassment was one of an authority figure with the likes of a student, inter to professor relationship. *Wamer* does not require post-notice harassment to occur to allow for a valid Title IX claim to proceed when a student-teacher relationship was present.

While unfortunate, The University of Michigan has faced some horrendous claims of sexual harassment from the internal medicine department that have been made public. With knowledge of other instances of sexual abuse occurring in the department, it is unconscionable that Defendant's failed to investigate Plaintiff's allegations against John Doe, a fellow internal medicine doctor within the department.

## E. §1983 Individual Liability Under A Title IX Theory

Defendants argue that there is no individual liability under Title IX. While discussion of individual liability under Title IX in the sixth circuit has been limited, other circuits have delved into the matter.

Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 et seq., does not restrict the potential class of defendants based on their nature or identity (i.e. individual, institution, etc.). It does, however, restrict them based on their function or role in a program or activity. Thus, the plain language of the statute sets forth a functional restriction that does not preclude individual defendants, as long as they exercise a sufficient level of control. An individual could be liable under Title IX if he exercised some level of control over the program or activity under which the discrimination occurs. *Norris v. Norwalk Pub. Sch.*, 124 F. Supp. 2d 791, 792 (D. Conn. 2000).

In *Mennone*, the court concluded that Title IX liability could be asserted against an individual who operates or controls a particular educational program or activity. *Mennone v. Gordon*, 889 F. Supp. 53 (D. Conn. 1995). Title IX restricts potential class of defendant's based on their function or role in a program or activity (not on their status). In ruling on a motion to dismiss the plaintiff's Title IX claims against her teacher and the superintendent, the court determined that the language of

Title IX does not restrict the potential class of defendants based on their status, but rather based on their function or role in a program or activity.

Further, Title IX provides that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681. The court found that the plain language of section 1681 "broadly refers to discrimination occurring 'under any education program or activity.'" *Mennone*, 889 F. Supp. at 56. According to the *Mennone* court: This language does not restrict the potential class of defendants based on their nature or identity (i.e. individual, institution, etc.). It does, however, restrict them based on their function or role in a program or activity. Thus, the plain language of the statute sets forth a functional restriction that does not preclude individual defendants, as long as they exercise a sufficient level of control. *Id.*

The court therefore concluded that an individual could be liable under Title IX if he exercised some level of control over the program or activity under which the discrimination occurs.

Here, Defendants are individuals who operate or control a particular educational program or activity. They failed to investigate claims of sexual harassment against a professor, providing him with the means to continue

perpetrating such crimes. For this, the individual Defendants should not be able to seek refuge under a Title IX individual liability exception.

Defendant's interpretation of *Fitzgerald* is misplaced. Title IX contains no express private remedy, much less a more restrictive one. This Court has never held that an implied right of action had the effect of precluding suit under § 1983, likely because of the difficulty of discerning congressional intent in such a situation. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256, 129 S. Ct. 788, 796 (2009).

Congress modeled Title IX after Title VI of the Civil Rights Act of 1964. *Id., citing Cannon v. Univ. of Chi.,* 441 U.S. 677, 99 S. Ct. 1946 (1979). Congress passed Title IX with the explicit understanding that it would be interpreted as Title VI was. *Id.*, citing *Cannon* at 696, 99 S. Ct. 1946, 60 L. Ed. 2d 560. At the time of Title IX's enactment in 1972, Title VI was routinely interpreted to allow for parallel and concurrent § 1983 claims and we presume Congress was aware of this when it passed Title IX. *Id.,* citing *Franklin v. Gwinnett Cty. Pub. Sch.,* 503 U.S. 60, 112 S. Ct. 1028 (1992). *Franklin* provided that in assessing Congress' intent, "we evaluate the state of the law when the Legislature passed Title IX". *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 112 S. Ct. 1028 (1992). In the absence of any contrary evidence, it follows that Congress intended Title IX to be interpreted similarly to allow for parallel and concurrent § 1983 claims. *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 112 S. Ct. 1028 (1992). At the least, this indicates that Congress did not

affirmatively      intend      Title      IX      to      preclude      such      claims.
*Id.* Therefore, Defendant's claim that individual liability doesn't exist under Title IX should be dismissed.

### F. Defendant's Are Not Entitled to Qualified Immunity

Defendants argue that qualified immunity shields them from personal liability. "Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known*." Silberstein v. City of Dayton*, 440 F.3d 306 (2006). To overcome this defense, Plaintiff must allege "facts sufficient to indicate that the [government official's] act in question violated clearly established law at the time the act was committed." *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir.1992).

These facts must satisfy two prongs. First, she must show that "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred." *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir.2005); see also *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Second, Plaintiff must show that "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Sample*, 409 F.3d at 696; see also *Saucier*, 533 U.S. at 201. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general

proposition[.]" *Id.* The plaintiff's fate without a hearing and cross-examination was a "disturbing . . . denial of due process." *Doe v. Univ. of Mich*., 448 F. Supp. 3d 715, 728 (E.D. Mich. 2020), citing *Doe v. University of Cincinnati*, 872 F.3d 393 (2017).

Plaintiff had a right to due process through the Title IX process. An intake was completed with Plaintiff at which point Defendants subsequently failed to provide an ounce of concern when they deliberately chose not to investigate the matter. Plaintiff was lied to about the status of the investigation when Defendant Baum stated that John Doe has been fired from the University. By providing to Plaintiff through Baum's follow up with her that Defendant had been fired and spoke to about his behavior, Plaintiff relied upon this assertation that Defendant had investigated the claim an come to a determination. This was a misrepresentation on the part of Defendants which deprived Plaintiff further of her rights.

### G. Jurisdiction Over State Law Claims

Defendants correctly provide 28 U.S.C. §1367, which provides that "Federal courts can only exercise supplemental jurisdiction over state law claims as a result of 28 U.S.C. §1367". However, their conclusion that Plaintiff's federal claims fail is mistaken. A district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction" 28 U.S.C. §1367(c)(3). The Sixth Circuit has applied "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."

*Packard v. Farmers Insurance Co. of Columbus, 423 Fed. Appx. 580, 584 (6th Cir. 2011).*

As stated, and supported within this brief, Plaintiff's federal claims brought before the Court should be allowed to proceed negating the determination of supplemental jurisdiction on Plaintiff's state law claims.

The University of Michigan had "actual knowledge" of the sexual harassment and assault that Jane Doe suffered at the hands of John Doe because Plaintiff reported the sexual harassment and assault to the Defendants. Therefore, UM was legally required under Title IX to conduct a full and thorough investigation into the sexual harassment and assault suffered by Doe.

Lastly, it appears that Defendants intend to make an argument in relation to the Michigan Court of Claims Act based on headings with their motion to dismiss. No briefing is present on the Michigan Court of Claims Act. As such, those arguments are abandoned and must be denied.

## EVIDENCE PROVIDED BY DEFENDANTS

Defendants include a prior lawsuit filed by John Doe against Plaintiff in California Superior Court. Plaintiff is not represented by The Law Office of Keith Altman in connection with Plaintiff's California matter. Plaintiff currently has a motion to vacate the stipulated judgment and to nullify the settlement agreement as Plaintiff provides it was made under duress. **(Defendants Exhibit 3 and 4).**

## CONCLUSION

**WHEREFORE** the Plaintiff requests that the Court deny the Defendants

Motion to Dismiss in its entirety as there is a clear issue of fact to be heard by a jury.

Plaintiff requests that the case be set for trial.


Dated: December 8, 2023                    Respectfully Submitted,


                                           */s/ Keith Altman*
                                           Keith Altman, Esq. (P81702)
                                           THE LAW OFFICE OF KEITH ALTMAN
                                           33228 West 12 Mile Road, Suite 375
                                           Farmington Hills, Michigan 48334
                                           Telephone: (248) 987-8929
                                           keithaltman@kaltmanlaw.com
                                           *Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JANE DOE,                              Case No. 3:2021-cv-12492

      Plaintiff,              Hon. Shalina D. Kumar
v.                                     Mag. Judge Elizabeth A. Stafford

UNIVERSITY OF MICHIGAN,
et al.
      Defendants.

---

## CERTIFICATE OF SERVICE

I certify that on December 8, 2023, I served the foregoing Plaintiff's Response to Defendants Motion to Dismiss upon all parties herein by filing copies of same using the ECF System.

Respectfully Submitted,

*/s/ Keith Altman*
Keith Altman, Esq. (P81702)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorneys for Plaintiff*

26