UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>                              Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MICHIGAN et al.,<br><br>                              Defendants. | Case No. 21-12492<br>Honorable Shalina D. Kumar<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 43)**

**I.    Introduction**

Plaintiff Jane Doe claims that defendant University of Michigan (the "University") violated Title IX of The Education Act Amendments of 1972 ("Title IX"), *see* 20 U.S.C. § 1681 (Count I); University-employee-defendants David Baum, Elizabeth Seney, Margaret Gyetko, and Chung Owyang (collectively the "Individual Defendants") violated 42 U.S.C. § 1983 by breaching their duties under Title IX (Count III); and under state law, Baum and Seney were negligent in performing related duties (Count IV). ECF No. 20.

After briefing and oral argument on defendants' motion to dismiss for lack of Title IX standing and other grounds, the Court determined that it needed more information to resolve the factual issues as to whether Doe has standing to bring her Title IX claims. ECF No. 36. The Court ordered limited discovery into those factual issues and denied defendants' motion to dismiss without prejudice. *Id.*

Following limited discovery, defendants filed a second motion to dismiss, addressing the factual Title IX standing issues, as well as renewing its other arguments for dismissal. ECF No. 43. The motion is briefed, ECF Nos. 43-45, and requires no hearing for decision. *See* E.D. Mich. LR 7.1(f). For the reasons below, the Court grants defendants' motion.

## II.     Factual Background

In 2013, Jane Doe, a nineteen-year-old student at Michigan State University, met Dr. Philip Schoenfeld, a forty-nine-year-old gastroenterologist at the University, through an online website where they each sought a personal relationship. ECF No. 20, PageID.271, 273; ECF No. 43-9, PageID.867; ECF No. 43-2, PageID.791. Doe hoped to attend medical school. ECF No. 20, PageID.271, 273. Doe and Schoenfeld

entered a "mentoring relationship with intimacy", in which Schoenfeld would pay Doe $1250 per month and help her attain her goal of attending medical school, and Doe would have sex with Schoenfeld and "maintain her appearance." *Id.* at PageID.272-73. Over the course of this relationship, Doe alleges Schoenfeld subjected her to sexual violence and abused her. *Id.* at PageID.273-76. Their sexual relationship lasted a few months, from February 2013 to May 2013. *Id.* at PageID.273; ECF No. 43-2, PageID.791. But Schoenfeld continued mentoring Doe so that she could one day gain admission to the University's medical school. ECF No. 43-9, PageID.866.

In 2015, Schoenfeld offered Doe an internship at the University's Taubman Center (the "Taubman Center"). *Id.* at PageID.868-69; ECF No. 20, PageID.276. Doe accepted and began the internship without submitting any type of application, providing any identification, undergoing a background check, or completing HIPAA compliance training. ECF No. 43-9, PageID.868-69; ECF No. 20, PageID.277. Indeed, Doe did not receive any communications or acknowledgement from the University about an internship or shadowing opportunity, nor did she sign any code-of-conduct attestations as typically required. *Id*.

Doe did not explore whether she needed to take any such steps to formalize the internship, and she did not receive an ID or visitor badge from the University for use whenever she was on the premises. *Id.* at PageID.876. Schoenfeld did not notify anyone within the University that he planned to have Doe shadowing him, and University administration and leadership did not approve of any shadowing arrangement for Doe. ECF No. 43-2, PageID.791; ECF No. 43-10, PageID.915; ECF No. 43-12, PageID.954.

Without the University's knowledge or preapproval, Doe shadowed Schoenfeld in the Taubman Center on more than one occasion, although it is disputed exactly how many times. Doe estimates that she shadowed Schoenfeld at least once a week through the winter and summer of 2015. ECF No. 43-9, PageID.872. Schoenfeld states that Doe shadowed him fewer than 10 times. ECF No. 43-2, PageID.791. These shadowing visits consisted of Schoenfeld "asking individual patients if they would allow Ms. Doe to passively observe [their] interactions. If the patient granted verbal approval, then [he] allowed Ms. Doe to observe." *Id.*

Schoenfeld allegedly assured Doe that he obtained permission from the University before offering her the internship. ECF No. 20, PageID.277.

However, during the internship, Schoenfeld instructed Doe that if anyone asked why she was on the premises, she should tell the person that she was a family friend of Schoenfeld, which she later realized was to avoid raising their suspicions. ECF No. 43-9, PageID.873. He also instructed Doe to wear blue scrubs for the same purpose. *Id.*

Doe ended her internship in August 2015 because Schoenfeld's actions made her feel increasingly uncomfortable. ECF No. 43-9, PageID.878. For example, instead of using a public elevator, Schoenfeld would only walk her up to the Taubman Center's restricted access floor through a private stairwell, where he would touch her inappropriately. *Id.* Doe also felt progressively uncomfortable by Schoenfeld's written communications to her. *Id.* at PageID.888-89. Doe told Schoenfeld that she was done with the internship because she needed time to focus on her MCAT examination. *Id.* at PageID.880. But she left primarily because she felt sexually and verbally harassed by Schoenfeld. *Id.*

After Doe had ended their relationship, Schoenfeld allegedly stalked her and approached her at an off-campus Walgreens in August 2017. ECF No. 20, PageID.279.

In January 2018, Doe contacted the University's Title IX office to report Schoenfeld for rape and "predatory behavior." *Id.* at PageID.280; ECF No. 43-9, PageID.881. In February 2018, she met with defendants Baum and Seney, the University's Title IX Coordinator and Assistant Coordinator. ECF No. 20, PageID.280; ECF No. 43-9, PageID.881. Baum and Seney informed Doe that they could not conduct a formal investigation because Doe was not an active University student or employee but they would conduct an informal investigation into her report. ECF No. 20, PageID.280; ECF No. 43-9, PageID.881. Baum emailed Doe in April 2018 to inform her Schoenfeld's adjunct professorship with the University was "discontinued" and that he had been informed of her allegations. ECF No. 20, PageID.280. In June 2018, Baum emailed Doe stating that Schoenfeld was terminated and had been the subject of disciplinary action based on her reports. *Id.*

Doe alleges that in October 2018 she met with defendant Owyang, Schoenfeld's supervisor at the time of the internship, to discuss her safety at the hospital and that, at the meeting, Owyang informed Doe he had terminated Schoenfeld's employment based on her report and the resulting informal investigation. *Id.* at PageID.281; *see* ECF No. 43-10, PageID.915.

But according to Owyang's account of his meeting with Doe, Doe explained her situation with Schoenfeld to him, and he called Schoenfeld afterwards for clarification. ECF No. 43-10, PageID.915. Schoenfeld maintains that Owyang is the only individual from the University with whom he discussed his relationship with Doe. ECF No. 43-4, PageID.812.

Doe alleges that she later learned there is no record of any disciplinary action against Schoenfeld by the University, Schoenfeld was never informed of her Title IX report, and that, rather than being terminated, Schoenfeld elected to end his position during a phone call with Owyang in April 2018. ECF No. 20, PageID.282.

In September 2019, Doe learned through a public social media post that Schoenfeld was interviewing for a position at Stanford University that would involve both practicing medicine and teaching. *Id.* Out of concern that Schoenfeld would use this role to target Stanford students in the way he targeted Doe, Doe contacted Stanford's Title IX office and reported her experience with him. *Id.* After Doe began making allegations against him, Schoenfeld brought a defamation suit against her in California. In order to settle that case, Doe eventually sent written statements to several private

parties retracting some of her allegations against Schoenfeld. *See, e.g.*, ECF No. 13-2, PageID.152-53. Doe then filed this suit. ECF No. 1.

### III. Standards of Review

#### A. Rule 12(b)(1)

Rule 12(b)(1) permits dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where, as here, a defendant moves to dismiss for lack of standing, the motion amounts to a Rule 12(b)(1) motion for lack of subject matter jurisdiction. *White v. Am. Educ. Servs.*, 2021 WL 6340986, at *2 (E.D. Mich. Dec. 22, 2021), *report and recommendation adopted*, 2022 WL 94896 (E.D. Mich. Jan. 10, 2022).

A Rule 12(b)(1) motion may mount a factual attack on the Court's subject matter jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In factual attacks, the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Critically, the party invoking federal jurisdiction—here, Doe—bears the burden of proving the existence of federal jurisdiction. *Funderwhite v. Loc. 55, United Ass'n*, 702 F. App'x 308, 311 (6th Cir. 2017). The Court, however, must ultimately "police the boundaries of its limited jurisdiction." *Williams v. City of Detroit*, 2019 WL 2410719, at *3 (E.D. Mich. June 7, 2019).

### B. Rule 12(b)(6)

Rule 12(b)(6) permits dismissal for the failure to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

### IV. Analysis

#### A. Title IX Standing (Count I)

As a threshold matter, Doe must have standing to bring a Title IX claim. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). As a nonstudent, Doe establishes such standing if she shows she experienced discrimination "while participating in, or at least attempting to participate in," a University education program or activity. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686,

708 (6th Cir. 2022) (quoting *Doe v. Brown Univ.*, 896 F.3d 127, 131 (1st Cir. 2018)). According to *Snyder-Hill*, even if the so-called internship was not a bona fide education activity because it was merely a guise for Schoenfeld's exploitation, Doe could be deemed as "*attempting* to participate in an education program"—and thereby establish factual standing—if she "believed that [s]he was receiving a bona fide" internship with the University's Taubman Center. *Id*. at 709 (emphasis in original).

Defendants argue that the limited discovery completed by the parties establishes that Doe could not have believed that she was attempting to participate in a bona fide internship. They point to evidence that shows (1) she engaged in lies and deception with Schoenfeld regarding her presence at the Taubman Center, *see* ECF No. 43-9, PageID.873, 878; (2) she failed to investigate or comply with University policy or complete any required application, training, or background screening, *see* ECF No. 43-9 at PageID.868-69; ECF No. 43-6, PageID.842-49; ECF No. 43-11, PageID.932; and (3) the University did not provide acknowledgement, let alone any express or implied authorization of her presence at the Taubman Center, *see* ECF No. 43-2, PageID.791; ECF No. 43-10, PageID.915; ECF No. 43-12, PageID.954; ECF No. 43-9, PageID.876.

Doe fails to counter defendants' argument and evidence. She argues that defendants did not follow their policies and procedures in connection to her internship with Schoenfeld. But she does not dispute the evidence that shows she engaged in lies and deception during her internship, overlooked any steps typically required to establish a real University internship—such as submitting an application—and received no administrative authorization for her internship. Moreover, she offers no other evidence to show she believed that she was attempting to participate in a legitimate University internship. Because the evidence demonstrates that Doe did not believe that shadowing Schoenfeld at Taubman Center was a bona fide internship offered by the University, the Court finds that Doe has no standing in fact and dismisses her Title IX claim against the University (Count I) for lack of standing. *See Snyder-Hill*, 48 F.4th at 709; *Ritchie*, 15 F.3d at 598; *Funderwhite*, 702 F. App'x at 311.

## B. Failure to State § 1983 Claims (Count III)

Doe claims under § 1983 that Individual Defendants failed to investigate her Title IX report, thereby violating Title IX and subjecting her to discrimination. ECF No. 20, PageID.292-93; *see* ECF No. 44, PageID.996. Title 42 U.S.C. § 1983 enables individual capacity suits for

money damages against state officials. In order to state a § 1983 claim, a plaintiff must allege that (1) a person, (2) acting under color of state law, (3) deprived him or her of a federal right. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002).

Defendants argue that Doe's § 1983 claims against Individual Defendants invalidly rest on alleged violations of Title IX. Defendants rely on *Wilkerson v. University of North Texas*, which held that a plaintiff cannot state a claim under § 1983 based on an underlying violation of Title IX. 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016), *reversed on other grounds*, 878 F.3d 147 (5th Cir. 2017). The Court holds likewise.

As the *Wilkerson* court observed, "Title IX does not allow suit against individuals." *Id.*: *see Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("[Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." (citation omitted)). Like in *Wilkerson*, Doe attempts to circumvent this restriction by claiming under § 1983 that defendants violated substantive rights under Title IX. *See* 223 F. Supp. 3d at 608. If permitted to do so, Doe would gain rights that would be unavailable under Title IX—in conflict with Supreme Court precedent. *See Fitzgerald*, 555 U.S. at 257; *see also id.* at 255-56

(suggesting that § 1983 claims are precluded where they would allow access to new remedies).

Doe counters that Title IX does allow suits against individuals. However, the Supreme Court has made clear that Title IX does "not authoriz[e] suit against school officials, teachers, and other individuals." *Id.* at 257. The Court, therefore, concludes that a plaintiff cannot state a § 1983 claim based only on an underlying violation of Title IX. Because Doe attempts to do just that, the Court dismisses her § 1983 claim against Individual Defendants.

### C. Supplemental Jurisdiction Over Remaining State Claims (Count IV)

Doe's state law claim for negligence remains. Under 28 U.S.C. §1367(c)(3), the Court "may decline to exercise supplemental jurisdiction" over remaining claims if it has "dismissed all claims over which it has original jurisdiction." It is undisputed that the Court lacks original jurisdiction over the remaining negligence claim.

The Sixth Circuit has historically applied "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Insurance Co. of Columbus*, 423 Fed. App'x. 580, 584 (6th Cir. 2011); *Moon v. Harrison Piping Supply*, 465

F.3d 719, 728 (6th Cir. 2006). Even if a court dismisses all federal claims, it may appropriately hear any remaining state claims if doing so would be particularly efficient. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010); *Moon*, 465 F.3d at 728 (stating court must weigh "the interests of judicial economy and the avoidance of multiplicity of litigation" against a "concern over needlessly deciding state law issues").

In *Harper v. AutoAlliance Intern, Inc.*, 392 F.3d 195 (6th Cir. 2004), the Sixth Circuit found it appropriate to retain supplemental jurisdiction over the plaintiff's remaining state law claims. *Id.* at 211. Among its chief considerations was that the parties completed discovery; their summary judgment motions were ripe for decision; the plaintiff had engaged in forum manipulation; and through substantive rulings, the district court was familiar with the case facts and already had invested significant time in the case. *Id.* at 211-12.

As defendants argue, none of these factors compel the Court to retain supplemental jurisdiction over the remaining negligence claim. The parties conducted only limited discovery as to Doe's standing to bring her Title IX claims. No substantive motion awaits the Court's decision. There is no sign of forum shopping or manipulation. And the Court has not become

so familiar with the case facts that it would be against the interest of judicial efficiency to dismiss the negligence claim. Doe does not provide any counterargument as to why the Court should retain supplemental jurisdiction over the negligence claim. Accordingly, the Court declines to do so and, as a result, dismisses the negligence claim without prejudice against Baum and Seney.

### V.   Conclusion

For the reasons above, the Court **GRANTS** defendants' motion to dismiss. ECF No. 43. The complaint (ECF No. 20) is **DISMISSED**.

|  |  |
|---|---|
| Dated: September 26, 2024 | s/ Shalina D. Kumar<br>SHALINA D. KUMAR<br>United States District Judge |